and the other of whom has arrived at age since that time. If the trust has executed itself, and there is no trust duty to be performed by the trustee, then it may be proper to direct the payment by the executor direct to the adult legatees. In Yates v. Thomas, 35 Misc. Rep. 552, 71 N. Y. Supp. 1113, the question involved was under discussion. It was claimed that on the death of an annuitant the trust then and there ceased and terminated, and that, as the remaindermen were then entitled to an immediate delivery of the corpus, there was no unexecuted trust over which the surrogate had jurisdiction to appoint a trustee. But in that case the will provided that upon the death of the annuitant the trustee was to pay and divide the trust estate among certain persons in certain proportions, and the court held that, as the provisions for division and paying over had not been complied with, the trust was still unexecuted, and the surrogate had power to appoint a substituted trustee. Here we have two adults and two infants interested in the equitable division of these securities, and, while the adults might consent to receive a definite part of such securities as their share, no such consent can be made by the infants interested. A trustee has been named, with power to act for all, and without such action by him the trust would not be executed. In Matter of Fisher, 93 App. Div. 186, 87 N. Y. Supp. 567, the question of commissions arose regarding some stocks and bonds described as the contents of a safe deposit box, and given to several persons. It was held that these securities must pass through the hands of the executor and be converted into money, if necessary for the purpose of equitable division, and were not to be delivered to the legatees as a specific legacy. In this case it must be held that the infant legatees and the trustee are entitled to have the terms of the trust carried out by a division of the residuary estate into four parts by the trustee selected by the testator to do that, among other things, and the executor will therefore be directed to turn over the whole of their residuary estate for the purpose of the trust. Let findings and decree be prepared accordingly.

Decreed accordingly.

---

(46 Misc. Rep. 363.)

### In re LOSEE'S ESTATE.

(Surrogate's Court, Kings County. February, 1905.)

1. DEATH—PRESUMPTION—TIME.

Where a person disappeared without explanation, other than a supposition that he intended to commit suicide, a presumption that he is dead arises after seven years; and, without a determination that the death happened at some intermediate period, the time of the death dates from a decree adjudging him dead.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 1–3.]

2. SURROGATE—JURISDICTION.

The validity of a disputed assignment of an interest in the estate of a decedent cannot be determined by a surrogate.

3. ADMINISTRATOR—ACCOUNTING—PARTIES.

On final accounting of administratrix, there is no law requiring illegitimate relatives of the decedent, or persons holding disputed assignments of interests in the estate, to be cited.

**4. SAME—OPENING DECREE OF DISTRIBUTION.**

The next of kin of a son, who were also next of kin of his father, who died in 1896, leaving no estate and no debts, on final accounting made no mention of an illegitimate son of the father, and the estate was divided between the next of kin without administration on the estate of the father. Such illegitimate son had obtained an assignment of the father's share of the deceased's son's estate several months before the father's death, and left a will making his wife sole legatee and executrix, and in 1900 the decree of distribution on the son's estate was opened to let in parties for a hearing. In 1902 letters of administration were granted the wife on the father's estate, but an application to turn over the whole estate to her was refused. The son, whose estate was being administered, had disappeared in 1889 under circumstances showing an intent to commit suicide. *Held,* that the wife had no rights as executrix in the proceeding to open the decree of distribution; her testator not being properly a party to the accounting in 1898, and the validity of the assignment of his father's interest in the son's estate being questioned.

**5. SAME—PARTIES.**

A decree opening proceedings in the son's estate not having been made until after the death of his father, neither his representatives nor assignees had any standing in court.

**6. SAME—NECESSITY OF APPOINTMENT.**

Where a father died, leaving no debts and no estate, and the son subsequently died, leaving no debts, the next of kin of the father and of the son, being the same persons, could distribute the estate without administration.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 3, 10.]

In the matter of the estate of Stephen Losee, deceased. Petition to open a final decree of distribution. Dismissed.

Campbell & Hance, for petitioner.
Wilson & Wallis, for respondents.

CHURCH, S. This matter has been before the court on several occasions, and the rights of the parties have never been definitely determined. I shall, therefore, determine every question arising, in order that this somewhat involved proceeding may be finally disposed of.

Cornelius Losee lived on Long Island, and about 1850 had married a woman named Harriet Smith, by whom he had a child, Stephen Losee. Later he moved to Connecticut, where he lived with another woman, by whom he had children, one of which was named Thomas Losee. I am satisfied that this marriage was illegal, and that Thomas Losee was an illegitimate son. Cornelius Losee for the last 15 years of his life was an inmate of the poorhouse in Darien, Conn., at which place he died November 15, 1896, leaving no estate or debts. Stephen Losee never married. In February, 1889, he disappeared, under circumstances showing an intention to commit suicide. Thomas Losee, in 1896, more than seven years after Stephen's disappearance, made an effort to be appointed administrator of Stephen's estate. In this matter the question of his illegitimacy was raised, but not determined, as it appeared Thomas was not competent to receive letters. In April, 1897, the next of kin, on petition, secured letters of administration on his estate, and later made an accounting.

It is to be noted that the next of kin of Stephen Losee at the date of administration are the same persons as the next of kin of Cornelius Losee. In their final accounting they made no mention of Thomas Losee (the illegitimate), nor did they procure an administration of Cornelius Losee's estate, but made direct division between themselves. In August, 1896, Thomas Losee had gotten what is claimed to be an assignment from Cornelius Losee of all his share in his son Stephen's estate. Thomas Losee died March 21, 1897, leaving a will, making his wife (the petitioner herein) his sole legatee and sole executrix therein. In March, 1899, she filed a petition herein to open the final decree of distribution. A decision was made therein in April, 1900, which simply opened the decree and let the parties come in and be heard, in order that their rights might be determined. Subsequently, on April 15, 1902, letters of administration were issued upon the estate of Cornelius Losee. No attempt was made to go on with the hearing, but in 1902 the petitioner made a motion to have the entire estate turned over to her, which motion was denied.

The present motion is now made by the petitioner in a double capacity—as administratrix of Cornelius Losee and as executrix of Thomas Losee. The two characters under which the petitioner herein seeks to obtain this fund occupy a directly contradictory attitude towards such fund. It is impossible for any honorable person to fill two positions and discharge her duty by each, and it is perfectly manifest that the petitioner has taken two positions so as to be enabled to reach the fund, if it is possible to do so, and trust to luck hereafter to justify her disposition of the same. I therefore shall take up separately the rights to this fund—first by the administratrix of Cornelius Losee; and, second, the rights of the executrix of Thomas Losee.

The petitioner seeks to contend that under the decision of Surrogate Abbott, rendered in April, 1900, every question has been settled, and that therefore the fund should be turned over immediately to the administratrix of Cornelius Losee. I do not so interpret this decision. On the contrary, I find on the files of this court orders submitted by the counsel for the present petitioner, who was also the counsel in that proceeding, which asked the surrogate to then directly dispose of the fund; but the decree which the surrogate entered simply opened the proceeding in order to give the parties an opportunity to be heard and have their rights definitely adjusted. In other words, this decree was very much like an order opening a default, where the court is convinced that there is enough shown to give the party an opportunity to be heard, but carefully refrains from passing upon the merits of the controversy. It is true that some findings were made by the surrogate at the time, but what was the effect of these findings? Under the practice findings were unnecessary, and, although they appear to have been signed, they do not appear to have been in any way necessary to the decree; in fact, the decree, which was dated the same day, makes no reference to the findings, but says that it was simply made upon the papers in the case.

In considering the rights of Cornelius Losee, we first have to determine the date of the death of Stephen Losee. Where persons disappear without any explanation, other than the supposition that they intended to commit suicide, the presumption is that after the expiration of seven years they are dead. Eagle v. Emmet, 4 Bradf. Sur. 117. And while the court under special circumstances could specifically decree the death to have happened at some intermediate period (Allen v. Ketcham, 5 N. Y. Supp. 566), yet, in the absence of any such determination, the time of death will ordinarily date from the decree adjudging the party dead. If this were so, then, as the decree was not made until after the death of Cornelius, it necessarily follows that Cornelius' representatives or assignees would neither of them have any standing here, and the proceedings might properly be terminated without further inquiry.

But, assuming that Stephen predeceased Cornelius, at the time of the accounting the next of kin of Cornelius were the same as the next of kin of Stephen, assuming that Cornelius had died first; and as it appeared affirmatively that there were no debts, the parties could distribute directly, without the necessity of appointing an administrator for Cornelius Losee, whose sole duty would be to distribute again to the same persons. Schouler, Ex'rs, § 120. "Administration is granted on an estate because there is some occasion for such a grant; and where there is no occasion, no substantial object to be gained by the issue of letters, the grant should be withheld." A case very similar is that of People v. Abbott, 105 Ill. 595. "Where there are no debts, and the property is already distributed, and there are no suits to be brought, there can be no necessity for an administration." See, also, Herrington v. Lowman, 22 App. Div. 267, 47 N. Y. Supp. 863; Carmichael v. Ray, 40 N. C. 367; Fretwell v. McLemore, 52 Ala. 124; Teal v. Chancellor, 117 Ala. 616, 23 South. 651; Babbitt v. Bowen, 32 Vt. 437. That being so, this administratrix has no standing here, because she cannot claim that she represents either next of kin of Cornelius (as they have had their share) ; and as there are no creditors she cannot pretend that she has any duty in that respect. Nor has she any duty in regard to the claim which Cornelius had given to Thomas, because, if he signed that away, then he had no interest whatever. It has been held that if it is claimed that a party has assigned his rights, which assignment is disputed, such assignment is not a bar; but if, as in this case, the party not only admits, but stands on, the assignment, then the court may act thereon (Bonfanti v. Deguerre, 3 Bradf. Sur. 429), and upon her statement here the letters issued on Cornelius' estate should be revoked.

Secondly, what rights has the executrix of the estate of Thomas Losee? If Thomas was the legitimate son of Cornelius and the half-brother of Stephen, he would be next of kin, and the accounting of 1898, which ignored him, would be ineffective. As I have stated, the proofs satisfy me that he was illegitimate, and hence was not properly a party to that proceeding. What right did he have as an assignee of the interest of Cornelius Losee in the estate of Thomas Losee? The validity of this assignment is ques-

tioned. That being so, the question of its validity is beyond the jurisdiction of the surrogate to try. Matter of Randall, 152 N. Y. 508, 46 N. E. 945. Therefore, even if this were an accounting by the administratrix of Cornelius Losee, the surrogate would not pass on the rights of Thomas Losee thereunder, but would direct distribution to these respondents. The disinclination to recognize assignments is further evidenced by chapter 692, p. 1690, Laws 1904, which provides such assignments shall have no effect unless recorded. The executrix of Thomas Losee has no rights in this proceeding, therefore, under any aspect in which we might view the case.

This decision is somewhat at variance with the views expressed by my learned predecessor, in his opinion on the motion to open the decree. It is with extreme reluctance that I differ with one who for so many years so capably filled the office of surrogate in this county; but he has quoted no authority in support of his views, whereas a careful examination of the authorities has convinced me that his conclusions were not in accordance with the law. It seems to me, therefore, that deference to his learning does not require me to ignore decisions of the highest courts of this and other states. I appreciate, also, that he indulged in certain strictures as to the conduct of the administratrix herein, with which I am also unable to agree, as it has been shown that there was no reason or necessity to appoint an administratrix for the estate of Cornelius Losee, and when the administratrix cited the various parties in question she complied with all the provisions of the statutes governing her conduct. I know of no provision of law which requires an administratrix to cite illegitimate relatives of the deceased and require them to come forward and disprove their illegitimacy; nor is there any provision which requires an administratrix to cite persons claiming to hold disputed assignments of the shares of any of the next of kin, because, as has been shown, the court has no power to hear or determine any question in regard to such disputed assignments.

If there is anything in the case which merits judicial criticism, it is the conduct of the illegitimate son, Thomas Losee, who permitted his father to remain in the county poorhouse without visiting him for 15 years, except when he wanted to procure a paper which, if valid, would enable said Thomas Losee to get the entire estate of Stephen Losee.

Proceedings dismissed, with $70 costs.