BERTHA BUTLER, Respondent, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

**Death — insurance (life) — presumption of death arising from continuous absence of seven years — general rule and application thereof — evidence required to establish such presumption.**

1. While it is a general presumption in law that a person who has been continuously absent from his home or place of residence, and unheard from, or of, by those who, if he had been alive, would naturally have heard of him, through the period of seven years, is dead, the burden of establishing the facts which may, within reason, give rise to the presumption is upon the person invoking it. He must prove more than the mere fact of absence during the period, and must produce evidence to justify the inference that the death of the absentee is the probable reason why nothing is known about

him.   The proof should remove the reasonable probability of his being alive at the time.

2. Whether or not the presumption of death arises from the evidence is almost always, of necessity, a question for the jury.   Whenever, however, the evidence is without contradiction and incapable, whether without or with contradiction, of creating, in reasonable minds, conflicting inferences, the question is one of law for the trial justice to decide.

3. Where in an action brought by the beneficiary of a policy of life insurance, who is the mother of the insured, the plaintiff offered no direct evidence of his death, relying upon the presumption of death arising from his absence, unheard of, during more than seven years, and the unconflicting evidence produced by plaintiff shows that the alleged decedent had the definite and fixed intention of not returning to the home of his parents but had formed the purpose of seeking elsewhere the opportunity and location satisfactory to him and conducive to the acquisition of money, and none of the communications to his parents and other facts justify the inference that death is the probable reason why nothing has been heard from, or of, him for seven years, the evidence does not uphold the presumption of death and a judgment for plaintiff entered upon the verdict of a jury cannot be sustained.

*Butler* v. *Mutual Life Ins. Co.*, 173 App. Div. 1001, reversed.

(Argued November 19, 1918; decided January 7, 1919.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 1, 1916, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Murray Downs* and *Frederick L. Allen* for appellant. Plaintiff must prove death and cannot recover merely upon a presumption of death. (*Buffalo L., T. & S. D. Co.* v. *Knights Templar,* 126 N. Y. 450; *Knights Templar* v. *Crayton,* 209 Ill. 550; *Charter Oak Life Ins. Co.* v. *Rodel,* 95 U. S. 232; *N. Y. L. Ins. Co.* v. *U. L. Ins. Co.,* 88 N. Y. 428; *Cunnius* v. *Reading School Sistrict,* 198 U. S. 458; *Scott* v. *McNeal,* 154 U. S. 34; *Cerf* v. *Diener,*

210 N. Y. 156; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Donovan* v. *Twist*, 105 App. Div. 171; *McCartee* v. *Campbell*, 1 Barb. Ch. 455; *Straub* v. *A. O. U. W.*, 2 App. Div. 138; 158 N. Y. 729.)

*Hiram Wooden* and *Patrick Cauley* for respondent. The trial court properly submitted to the jury, as a question of fact, the matter of the death of the insured. (*Matter of Bd. of Education*, 173 N. Y. 321; *Higgins* v. *Eggleton*, 155 N. Y. 466; *Reilly* v. *Troy Brick Company*, 184 N. Y. 399; *Koehler* v. *New York Steam Co.*, 183 N. Y. 1; *Mannheimer* v. *Ind. Order*, 83 Misc. Rep. 457; *Connor* v. *N. Y. L. Ins. Co.*, 179 App. Div. 596; *Murphy* v. *Met. L. Ins. Co.*, 92 Misc. Rep. 479; *Policemen's Benev. Assn.* v. *Ryce*, 213 Ill. 9; *Matter of Benjamin*, 155 App. Div. 233; *White* v. *Emigrant Ind. Savings Bank*, 146 App. Div. 591; *Matter of Wagener*, 143 App. Div. 286; Lawson on Presumptive Evidence, 250; *Barson* v. *Mulligan*, 191 N. Y. 306; *Matter of Bd. of Education of N. Y.*, 173 N. Y. 321; *Mutual Ben. Life Ins. Co.* v. *Martin*, 108 Ky. 11; *Springmeyer* v. *S. C. W. W.*, 163 Mo. App. 338.) Plaintiff has furnished the defendant with satisfactory proofs of death. (*Mannheimer* v. *Ind. Order*, 83 Misc. Rep. 457; *Cummer Lumber Co.* v. *Ass. Man. Mut. Fire Ins. Corp.*, 67 App. Div. 151; 173 N. Y. 633; *Dobson* v. *Hartford Fire Ins. Co.*, 86 App. Div. 115; 179 N. Y. 551.)

COLLIN, J. The beneficiary in a policy of life insurance brought the action to recover the amount of the insurance. The policy, issued by the defendant, dated May 12, 1905, insured Charles E. Butler. The plaintiff offered no direct evidence of his death, relying on the presumption of death arising from his absence, unheard of, during more than seven years. At the trial the defendant duly excepted to the denial of its request at the close

of the evidence that the complaint be dismissed. The jury, under the submission of the question whether or not the absence of the insured was caused by his death, rendered a verdict in favor of the plaintiff. The decision of the Appellate Division was not unanimous. We are, therefore, to determine whether or not the evidence upheld the presumption.

The evidence justified the jury in deeming established the facts: In May, 1905, the insured resided with his parents and two brothers in the city of Rochester, New York. In March, 1906, having learned the machinist's trade, he went to St. Louis, Missouri, and became an employee, as a traveling installer, of a telephone company. He was twenty-two years of age, in sound health, of good appearance and habits. He had received an ordinary education and possessed ordinary intelligence. He remained in the employ of the telephone company about one year, during which, in the performance of his duties, he traveled quite extensively. In April, 1907, he became an employee of the Western Electric Company at Coffeyville, Kansas. When such employment ceased is not disclosed. At the time he left Rochester his relations with the members of his family were very friendly. Through the year next succeeding March, 1906, he very frequently wrote letters to his mother. He wrote to no other member of the family. Thereafter his letters were infrequent and after October, 1907, no letter or communication was received by his mother from him, and no tidings whatsoever of him were received by his mother or anybody else to her knowledge. A letter from him to his mother dated St. Louis, Missouri, March 16, 1906, stated that he inclosed for her a money order for ten dollars of his wages. A like letter under the date of March 31, 1906, stated: "Received your letter yesterday and as pay day is here I waited till I could send a money order." A letter from him, dated "Sterling,

Kansas, Oct. 16, 1906," stated: " I thank you most greatly for your offer to me but it is true I haven't saved a cent. I earn enough to keep myself honestly and independent. I have left Dodge for a couple of weeks as I couldn't get my brakeman's job till after November 1st, so I thought I would try at other division points till I got a position or go back to Dodge; at any rate I shall make a visit east in the spring. I want to visit the mining towns in Colorado, if possible. Then I am going to settle down, if things are as good in Rochester, as when I left. It shall be there; if not, why money is what I want and it will be where there is money as I can't make much. * * * Address me at Newton, Kansas, Gen. Del'y." In June, 1907, his mother received a postal card from him with the post mark on it " June 4 1907 " and the inscription, " Plaza, Fort Scott, Kan.," which stated: " Going through to Kansas City." No communication came from him between the receipt of it and the receipt of a letter dated September 22, 1907. His parents and brothers had lost all trace of his whereabouts and occupation. In July, 1907, his mother wrote a letter to the Western Electric Company and a letter also to the employer telephone company, asking information with regard to him. Each company replied that it was unable to give her any information. In September, 1907, his mother received a letter from him, dated Hutchinson, Kansas, September twenty-second, 1907, which stated: " No doubt you will be surprised to hear from me as no doubt you think me in jail but I am not nor haven't been, but I have come to the conclusion that I am a failure in this old world and till I could take a brace I wasn't going to lie to you and make you think me a howling success. I am trying to get a job as brakeman on the Santa Fe R. R., as it pays pretty good money, averages about $100 per month. I need recommendations to get it. Must have one from some one

who has known me for five years back. I have been straight that long now or you would have heard different by this time, so I want you to get Pa to get S. G. McGrail to say he has known me that long and he has and say I am straight. It doesn't put him under obligations to R. R. Co. and if he will do that I will promise you $10 a month for 6 mos. if I get the job. Write me a letter, don't scold, I may turn out O K after all, am certainly going to try. If I don't get this, I am going farther south for winter and north in spring. Tell me about S. P. Bernie, Elmer and Pa. I love you all, even if I have not showed it. Lovingly yours, Charlie. I leave Hutchinson to-night for Dodge City, Kansas, so address at Dodge City, Kansas, Gen'l. Del'y." Neither his mother nor father gave this letter answer or attention. The request was not complied with and no attempt was made to renew or continue the correspondence with him. The only further communication between them were two postal cards received from him in October, 1907, the one post marked Raton, New Mexico, which stated: "I am going farther west;" the other post marked Reno, Nevada, which stated: "I am on my way." In 1910 the plaintiff made ineffectual inquiry concerning him of the police marshal of Raton, New Mexico. In 1912 she received letters, in response to inquiries by her, from the authorities of thirteen or more state penal institutions, stating in effect that he was not and had not been a member of either of those institutions. In 1914 and 1915 ineffectual inquiry was made by her of the police department of Sioux City, Iowa, of the post office authority of Oklahoma, Oklahoma, and of the Union Pacific Railroad Company at Chicago, Illinois. The plaintiff also advertised in the New York *Journal* and Rochester and Chicago papers. When the insured left Rochester there was a deposit in his name of about one hundred dollars which remained on deposit and had been

transferred, at a time not disclosed, from his name to that of his mother. We have concluded that, as a matter of law, no inference could be reasonably drawn from those facts that the insured was dead.

The law contains the general presumption that a person who has been continuously absent from his home or place of residence, and unheard from or of by those who, if he had been alive, would naturally have heard of him, through the period of seven years, is dead. The presumption does not arise, however, when there exist circumstances or facts which reasonably account for his not being heard of, or his absence and abstention from communication are reasonably explained without assuming his death, or where diligent inquiry as to whether he is alive or dead has not been made. The presumption is the offspring, created by the courts, of the statutes enacted centuries ago providing that a tenant of real estate for life, or a husband or wife, who had been under a continuous and unexplained disappearance for a designated number of years, should be presumed to be dead. (*Matter of Board of Education of New York,* 173 N. Y. 321. See, also, Code of Civil Procedure, section 841; Penal Law, section 341.) The burden of establishing the facts which may, within reason, give rise to the presumption is upon the person invoking it. He must prove more than the mere fact of absence during the period. He must produce evidence to justify the inference that the death of the absentee is the probable reason why nothing is known about him. Before a court is justified in presuming the death of a person, at a designated time, because of his absence, the proof should remove the reasonable probability of his being alive at the time. The presumption does not arise where it is improbable there would have been any communication with those who naturally would receive it. Whether or not the absence is unexplained except by death, or, in

fine, whether or not the presumption arises from the evidence is almost always, of necessity, a question for the jury. Whenever, however, the evidence is without contradiction and incapable, whether without or with contradiction, of creating, in reasonable minds, conflicting inferences, the question is one of law for the trial justice to decide. (*Matter of Board of Education of New York*, 173 N. Y. 321; *Matter of Wagener*, 143 App. Div. 286; *McCartee* v. *Camel*, 1 Barb. Ch. 455; *Fuller* v. *New York Life Ins. Co.*, 199 Fed. Rep. 897.)

The instant case rests wholly upon unconflicting evidence produced by the plaintiff. The contents of the communications from the insured establish· clearly and directly that he, prior to and at the time of the cessation of those communications, had the definite and fixed intention of not returning to the home of his parents. He had formed the purpose of seeking elsewhere, in the west, or the north or the south, the opportunity and the location satisfactory to him and conducive to the acquisition of money. He had become a fortune seeker. He declared his intention of settling and of engaging in business in another place than the city of Rochester, and his absence from that city does not create the inference that it was caused by his death. The contents of those communications and the other facts do not justify the inference that death is the probable reason why nothing has been heard from or of him since October, 1907. They establish that the insured left the home of his parents hopeful and intending to send his mother moneys from his wages to be saved. His absence was not to be temporary. The anticipated success and result were not achieved. The proof discloses two remittances only to his mother. His letter of October 16, 1906, reveals an offer of financial help from his mother to him, the facts that he had not saved a cent and was seeking a change in his occupation to that of a brakeman, and

had acquired the inclination to seek new opportunities and locations. The ties of his former home and of family were disintegrating and dissolving. As early as April, 1907, he had formed the resolve or practice, at least, of refraining from sending letters to his family. Between that month and the latter part of September, 1907, the sole communication from him was the postal card of June 4, on which he stated: " Going through to Kansas City," and his parents did not know where he was or what he was doing and sought information in those respects from those who had employed him. His letter of September 22, 1907, shows that it was written solely because he wished his father to procure and forward to him a recommendation. It did not afford his parents any intelligence of his condition, occupation or location through the previous months during which he was unheard of. The first sentence of it is persuasive to the conclusion that his silence was deliberate and was to continue until he had proven, at least, that he was not " a failure." His practice of refraining from writing to his parents was naturally confirmed and made rigorous by the facts that his parents declined to fulfill his request or to further correspond with him. In the postal cards of October, 1907, he told them, simply, he was on his way farther west. He did not care to inform them of his intended or probable destination or occupation or vouchsafe a single word concerning his condition, intentions, or past activities. He, in effect, had ceased to communicate with his family through many months during which it is certain he was living, and his later writings indicate, beyond question, that the cessation would be continued. The clear and direct inference is that his resolution and habit, and not death, is the probable reason why nothing was known about him at the commencement of this action. This inference is upheld additionally by the other facts. He was young, unmar-

ried, in good health, of good appearance and ambitious to prove himself capable of securing success. There is no suggestion in the evidence that he was despondent, or was or intended to be venturesome or prone to subject himself to unusual risks. We know commonly that disappearances such as his are not rare. His future appearance is not improbable. In view of the present agencies of extending aid and care in case of sickness or accident, and intelligence to those concerned in case of disaster or death, the facts put forward as the source of the presumption of death, because of absence and lack of intelligence, should be carefully considered and should sustain that presumption.

We do not consider whether or not the inquiry of the plaintiff concerning the insured was diligent and suitable.

The judgment should be reversed and a new trial granted, costs to abide the event.

CUDDEBACK, CARDOZO and CRANE, JJ., concur; HISCOCK, Ch. J., POUND and ANDREWS, JJ., dissent.

Judgment reversed, etc.