In the Matter of the Administration of the Estate of EDITH ANN C. WYLLIE, Deceased.
In the Matter of the Administration of the Estate of ALBERT DOUGLAS STUART WYLLIE, Deceased.

Surrogate's Court, Monroe County, September 20, 1929.

*MacFarlane & Harris* [*William MacFarlane* of counsel], for the petitioners.

FEELY, S. These two proceedings are quite alike, and will be discussed together. In each this court is asked to declare a person presumptively dead, a brother and a sister. The petition, reciting the facts of absence, silence and search, alleges the petitioners believe the person to be dead. Without stopping to consider whether there be any explicit authorization therefor in the Surrogate's Court Act, this court did issue a citation, which was served by publication. In form the citation runs to the supposed decedent, if living, and if dead, to the decedent's mother, brother or sister, and so forth, and to named relatives of the decedent's father, the petitioners herein, resident in British Columbia, to show cause why letters of administration should not issue. The estates, proposed to be liquidated, consist of two sums aggregating $7,254.91 deposited in the county treasury to the credit of the supposed decedents respectively as residuary legatees of their father's will.

There being no opposition on the return day, the court took the testimony and reserved decision. A look at the legal landmarks will keep the discussion of the facts along the right lines.

The presumption of death, originating in acts of Parliament dealing with bigamy, or with leases dependent on lives, was enacted in this State in section 841 of the Code of Civil Procedure, now repeated in section 341 of the Civil Practice Act, in these words: " § 341. Presumption of death in certain cases. A person possessed of personal property in this State or upon whose life an estate in real property depends, who remains without the United States, or absents himself in the state or elsewhere for seven years together, is presumed to be dead, in an action or special proceeding concerning such property or the administration of the estate of such person, unless it is affirmatively proved that he was alive within that time."

Such statutes are said to " indicate a legislative policy in dealing with absent persons who at one time or a certain time were living.

They carry into effect the principle laid down in *Matter of Wagener* (143 App. Div. 286, 288): ' Rights are not to be held in abeyance indefinitely on account of the absence of a person of whom no trace can be found. He may not be dead, but still he will be presumed to be dead for the purpose of fixing the rights of those known to be living.' " (*Matter of Meserole*, 132 Misc. 259, 262.)

The last sentence of that quotation, although it represents a popular impression of the statute, seems to be too broad. Before a surrogate can distribute the property of a citizen among the latter's heirs presumptive, he must be satisfied that such person is actually physically dead; because such death is a jurisdictional fact (*Scott* v. *McNeal*, 154 U. S. 34) to be averred and proved. Our Court of Appeals has said: " There is no authority conferred under any possible circumstances to grant administration when a person is living. But if a person be actually dead then the surrogate is ·vested with power over the general subject matter." (*Roderigas* v. *East River Savings Institution*, 76 N. Y. 316.)

For this basic reason the United States Supreme Court has held that any decree, whether of testamentary or of intestate distribution, upon a case of presumptive death, must, in order to comply with the " due process " amendment of the Federal Constitution, make adequate provision for the protection of the rights of the supposed decedent if he be actually alive at the time the decree is rendered. (*Cunnius* v. *Reading School District*, 198 U. S. 458, and cases in 6 L. R. A. [N. S.] 690.) It would seem that such protection, to be adequate, should be, at least, a bond for restitution of principal, with interest, during the possible duration of the life in question, or — to copy a phrase from *Young* v. *Shulenberg* (165 N. Y. 385) — until it would be contrary to the ordinary course of nature that he should be then living; but the Pennsylvania act, discussed in the *Cunnius* case, provided, aside from notice to the absentee, only for invalidation of the title of the distributees under the decree in case the absentee were in fact alive, together with a right of action in him to recover from them his scattered goods, notwithstanding the decree. This latter feature was held, by both the State and the Federal courts, to avoid conflict with the Fourteenth Amendment. This, apparently, forestalls argument on the hollowness of the assurance to a modern Enoch Arden that he shall have a right of action — as if he had lacked one — to retrieve his own property from the distributees, if and when he could, albeit with the aid of "All the king's horses and all the king's men." His protection against injustice must lie in the trial court's insistence upon sufficient satisfactory evidence.

Nothing like that Pennsylvania act is now in force in New York;

but on September 1, 1930, an act will take effect in New York that is quite like it, in respect both of notice to the absentee and of a cause of action against the distributees or legatees only (Laws of 1929, chap. 229, § 8, amending Surr. Ct. Act, § 56, subd. 5). This act will apply to the case of a person " who has disappeared under such circumstances as to afford reasonable ground to believe he is dead; " but the new act does not go on to say what quality or quantity of evidence shall be deemed to prove the fact of death.

Those underlying features of a presumptive death case are mentioned here, mainly, to emphasize the necessity of having the fact of death established by evidence amounting to a preponderance of probabilities of a quality befitting the nature of the subject-matter and its hazards. Mr. H. W. Jessup quotes the editorial summary of an opinion by the late Surrogate FOWLER on this subject, reported in the *New York Law Journal*, as follows: " The presumption of death after seven years' absence is not a presumption of law but one of fact, which may be rebutted by any inherent circumstance, or expressly. The presumption of death should not be lightly applied, but only when it is an irresistible inference from facts otherwise found." (*Matter of Smith*, N. Y. L. J. May 13, 1912; Jessup Surr. Pr. 329.)

Many applications to declare a person presumptively dead fall below the measure of proof last mentioned. No other case using that formula has come to the attention of this court. The most recent case in our highest court requires that " the proof should remove the reasonable probability " of the person being alive. (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197, 203.) Such applications not infrequently are made upon evidence so scant as to present the problem, which of two weak probabilities is the weaker.

Assuming the rule to be a preponderance of evidence appropriate in quality to the nature and the risks of the subject-matter, what are the facts shown here?

These two persons, a brother and sister, each of whom this court is now asked to declare presumptively dead, if they are still living, would be now about forty years of age. When the boy was about fourteen and the girl eleven or twelve, in the year 1904 or 1905, a divorce parted their parents; and their mother then took them both with her to Denver, Colo. During the fifteen years next following the breaking up of this family, the father continued to live in Rochester, and heard nothing as to the whereabouts of his children, and did not know whether they were living or dead. He so informed his attorney in 1920, upon the occasion of the drafting of his last will and testament. He was then about sixty years of age, and for a number of years had been in the employ of the Star

Palace Laundry. He had not given up hope, because in and by said last will he made these two children his residuary legatees. He died in the same year the will was made, 1920; and upon judicial settlement of his estate in 1927, the whereabouts of the two children being unknown to the attorney for the executor, this court directed the residuary legacies to be deposited in 1927 with the county treasurer, to their credit respectively, in the proportion of two-thirds to Albert and one-third to Edith. In this clause of the will he describes them as "my children," "my son" and "my daughter," without any address, or indication that their address was unknown, or that they might be dead. This residue was about half his net estate. The rest was bequeathed to petitioners and other relatives.

An extensive search was then made, resulting in information being received in 1925 that the mother had married a barber named Schmidl; and that the boy, Albert, in 1907 was listed in the Denver City Directory as an insurance agent, and that the sister had married; but that no trace was found in 1925 in Denver of any one after 1907 who knew anything about any of the three.

Assuming that the A. D. Wyllie, whose name only was found in the 1919 Los Angeles directory, is not the Albert in whom we are now interested, the proof as to the latter is that his father did not hear from or about him for the fifteen years of his life after the divorce in 1905, and that the father's relatives have not heard from him from 1905 to date.

Likewise as to Edith, except that some information was received which indicated she may have been three or four years older than above set forth; and also that the attorney for the estate received a phone message from an unidentified person in Geneva, N. Y., that she had read in a newspaper some years before, she thought in 1915, that Edith had been killed in an automobile accident; but this informant knew nothing of the facts and could not verify the report. This accident occurred five years before the time the father made his last will and died.

Is it more likely than not that both of these children are now dead, because they have not been "heard of for seven years by those (if any) who if he had been alive would naturally have heard of him?" (*Davie* v. *Briggs*, 97 U. S. 628, quoted in *Dunn* v. *Travis*, 56 App. Div. 317; *Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197.) Have they been absent or silent because they were dead? The probability of this is greatly weakened by the divorce. The mother took the children. She must have been the innocent party. They may have seen, or suffered from, misconduct in the home on the part of the father; or their mother may have suppressed any tend-

ency on their part to respect him, or any desire to communicate with him. There is no evidence they ever did communicate with him in any way whatever. (*Matter of Meyer*, 125 Misc. 360.) The mother probably did nothing to keep alive, in her group, the memory of the father. The children are not shown to have known anything of the father's means or estate, nor of these legacies. (*Matter of Sullivan*, 130 Misc. 501; *Matter of Meyer, supra; Cerf* v. *Diener*, 210 N. Y. 156, 161.) The children are not shown ever to have seen or written the uncles and aunts on the father's side, the petitioners herein, who are residents of Canada. Such collaterals are not presumed to be " near or dear." (David Wills, §§ 166, 167.)

The mother having remarried after divorcing the children's father, would not be expected to have kept in touch with him. She should be presumed to be still alive. As to the children, the fact of death has not been satisfactorily shown.

Even if it had been so shown, there are further difficulties. Each application postulates three deaths occurring in an order of time that would entitle parental uncles and aunts to inherit to the exclusion of the brother, or sister, as the case may be, or her children, or the mother. One presumption cannot rest upon another. (*Lamb* v. *Union Ry. Co.*, 195 N. Y. 260, 266.) If these children both be presumed dead, are we to presume also they each died single, intestate and childless? Edith is shown to have been married in 1907. Then the question arises, when did each of them presumably die? In this State the rule in cases where death is presumed is to fix the time of the presumptive death as of the date of the decree, unless peculiar facts appear which justify finding some specific earlier date. (*Matter of Losee*, 46 Misc. 363; affd., 119 App. Div. 107; *Matter of Rowe*, 197 id. 449; *Matter of Sanford*, 100 id. 479.)

" Before a court is justified in presuming the death of a person, at a designated time, because of his absence, the proof should remove the reasonable probability of his being alive at the time." (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197, 203.)

For those reasons, these petitioners, collaterals of the father, cannot be said to have made out any right to inherit this money, assuming the primary fact of death was proven.

In each case, the application is denied, without prejudice to the right of the petitioner to make further or other application upon additional proof. After September 1, 1930, such application could be made under more favorable statutory auspices. Let an order be entered accordingly.