In the Matter of the Probate of the Will of JEANNE MAGRE, Deceased.

Surrogate's Court, New York County, June 3, 1947.

*Murray K. Josephson* for petitioner.

*Joseph A. Cox* for Francis J. Mulligan, Public Administrator of New York County, respondent.

COLLINS, S. This is a proceeding by Claude E. Magre, a citizen of France sojourning in New York for the purpose of probating the will of his mother, Jeanne Magre. There is also presented an application by the petitioner to compel the Public Administrator, serving as temporary administrator, to provide funds for the petitioner's general maintenance and extraordinary expenses.

The petitioner's parents likewise were citizens of France. His father, an author, and commander of the Legion of Honor, predeceased the petitioner's mother. The petitioner is the only child of the decedent and sole legatee of her substantial estate.

The application catapults into our Surrogate's Court one of the distressing and perplexing consequences of the barbarities of World War II. More specifically, the answer of the Public Administrator poses the issue concerning the quality of proof requisite for a judicial determination of death of civilians in instances where the circumstances indicate death,

but where positive, eyewitness proof, or other proof of a conclusory character, is lacking. Cases have arisen involving victims of torture and persecution who have disappeared, leaving no technically corroborative trace of their whereabouts or final disposition, under circumstances evidencing extermination. In such cases, will the court accept a certificate of presumptive death, or will it require common-law proof of death?

In this particular lament, the Jewish decedent, born Rosen in Berlin, Germany, was arrested in Nice, France, by the German authorities of occupation. She was transferred to an internment camp perpetrated by the Nazis at Drancy, France, on October 20, 1943, wherefrom she was deported to Auschwitz, Poland, on October 28, 1943. It is alleged that a few days after her arrival at the latter internment camp she was put in a gas chamber. It is presumed, and it is here contended, that she was thus extirpated on November 2, 1943.

The petitioner himself, a law student in France, was confined to a German prison because of his mother's Jewish faith. The circumstance that he was a Lieutenant of Cavalry in the French Army from September, 1939, to September, 1941, did not save him from imprisonment. He served in the French Army again from November, 1944, to June, 1945, when he was honorably discharged. He avows that his experiences so undermined his health as to require medical care, entailing expense; his condition is described as " anxiety neurosis ", a form of psychoneurosis. It is his physical condition, and his approaching marriage, as well as other pressing reasons, which induce this application for relief.

That, in substance, is the tragic story. But we are far from the scene of the tragedy, and because of that and because of its nature and circumstances, the production of substantiating proof admissible under our rules, is not easy or simple. Though moved by the dire circumstances and the petitioner's plight, precaution, nevertheless, must be exercised; the interests of all concerned must be protected and safeguarded. Technicalities will not be strained, yet orderliness, uniformity, and certainty in the administration of the law compel the promulgation of, and adherence to, such a policy regarding the degree of proof of death as to minimize the probability of error or injustice. The legal bars must not be so let down as to allow frustrations of justice to hurdle them.

A citation in the probate proceeding has been duly published pursuant to the provisions of subdivision 5 of section 56 of the Surrogate's Court Act.

Some of the documentary proof proffered to establish death, though persuasive, was not legally admissible. However, a properly authenticated certificate of the presumptive death of the decedent was received in evidence. Such certificate declares that the decedent was presumed to have died on November 2, 1943, at Auschwitz, Poland. It was issued by the Ministry of War Veterans and Victims of War, and is signed by the Officer of Civilian Status. The certificate asserts: "The present certificate was established by us, Official of Civilian Status at the Ministry of War Veterans and Victims of War at Paris, November 14th, 1946, in conformity with the dispositions of the ordinance number 452561 of October 30th, 1945, (article 3), inserted in the Official Journal of October 31st, 1945, on the basis of information in the file of the party that was submitted to us the same day."

Under the French law dealing with the issuance of certificates of presumptive death, and which was received in evidence, the Ministry of War Veterans and Victims of War is authorized to issue certificates of presumptive death.

Another certificate, issued by the Prefecture du Departement de la Seine, and purporting to be an extract from the minutes of a death certificate, was offered in evidence. The information contained in this Prefecture certificate corresponds to that appearing in the certificate of the Ministry of War Veterans and Victims of War, but it makes no reference to the latter, nor does it reveal the source of the information contained therein. Inasmuch as the evidence before the court does not show that the French statute authorizes the issuance of certificates of presumptive death by the prefectures of the departments of France, the Prefecture certificate could not be received in evidence. Perhaps the purpose of that certificate is to effect a registration of the certificate of presumptive death at the place of domicile of the decedent.

Still another certificate offered in evidence was issued by the Association of Deportees of Auschwitz and of Camps of High Silesia. This certificate was signed by Felix Frucht, who certified that the decedent "was deported from Drancy on October 28th and was designated for the selection on November 2nd, 1943, to be gassed." The Frucht certificate was legalized by the United States Embassy. Attached to this cer-

tificate is a statement signed by the Officer of Civilian Status of the Ministry of War Veterans and Victims of War, which certifies that Felix Frucht was deported on October 28, 1943, from Drancy, in the same convoy with Jeanne Magre, the decedent. Here, therefore, we have an eyewitness to a vital link in the chain of lethal disposition. It is quite probable that the Ministry of War Veterans and Victims of War had the benefit of Frucht's testimony and placed some reliance thereon in issuing the certificate of presumptive death. Unfortunately, however, Frucht's certificate cannot be received in evidence because it is not a foreign record admissible under section 398 of the Civil Practice Act. If the Frucht statement is to be viewed as a deposition, it must be rejected because it was not given under circumstances permitting cross-examination. (*Matter of Asterio,* 172 Misc. 1081; *Matter of Johnson,* 172 Misc. 1075.)

Fortunately, the determination of the issue here presented is not entirely without precedent or guidance. Recently, my learned colleague, Mr. Surrogate DELEHANTY, was concerned with a similar problem. In *Matter of Elias* (189 Misc. 279, 281) he ruled that " * * * a certificate of presumptive death duly issued by a foreign state of domicile may be received in evidence." Such certificate, he added, " * * * is not conclusive on the court but suffices as a basis for a finding of death if there be no contradictory evidence." That case, too, concerned a Jewish deportee from the Drancy internment camp, who was never heard of again.

The proof of death is of greater strength in this case than was the proof in the *Elias* case (*supra*). There, the internee, along with others of the Jewish faith, disappeared under circumstances indicating death, but there was " no information about him in particular * * *." Here, however, the information is quite specific — that the internee was put in a gas chamber on November 2, 1943. Again, there, the decedent, though a resident of France, was of Roumanian citizenship, whereas here the decedent was both a resident and a citizen of France.

On the full body of the proof, and following the *Elias* precedent (*supra*), the court's conclusion is that though the certificate received in evidence is not conclusive on the court, it suffices as a basis for a finding of death if there be no contradictory evidence. A finding is therefore made that the deceased died prior to December 27, 1946, the date on which the petition

for probate was filed. The court will move onward in the probate proceeding and the matter is remitted to the probate clerk for further action in accordance with the law and practice of this court.

The application to compel the temporary administrator to provide maintenance to the petitioner pending the probate of the will is in all respects granted.

Submit order on notice.