In the Matter of the Estate of KARLIS JANSONS, Deceased.

Surrogate's Court, New York County, June 25, 1947.

*Robert H. Law, Jr.,* for Janis Zalcmanis, attorney in fact for Gertrude Jansons and others, petitioner.

*Joseph A. Cox* for Public Administrator of the County of New York, respondent.

COLLINS, S. This proceeding is another reverberation of the calamitous consequences of World War II. It is an application to declare Karlis Jansons, an absentee, to be dead, for a determination of his distributees, and for a decree directing that letters of administration on his estate be granted to the Public Administrator, who is now acting as temporary administrator.

The petition was entertained by the Surrogate who directed the issuance of a citation, pursuant to the provisions of subdivision 2 of section 119 of the Surrogate's Court Act, to all the parties who would be interested in the estate if the alleged decedent were dead and directed that the alleged decedent be served with citation in the manner provided by section 58 of the Surrogate's Court Act.

The answer of the Public Administrator put in issue the fact of death of the alleged decedent.

At the hearing, convincing proof of the claim that Jansons is dead was given by Janis Zalcmanis, who was in a peculiar position to know the singular facts surrounding Jansons' fate.

Zalcmanis testified that for more than twenty years he and the absentee had been partners in the shipping business; together they had operated steamships at Riga, the capital of Latvia. On the fateful June 17, 1940, Latvia was occupied by Russia, and shortly thereafter the Russian authorities commandeered the prosperous steamship business operated by the absentee and the witness. The absentee and Zalcmanis were forced to remain at the steamship office, teaching the Russian officials the steamship business. Some time thereafter, they were released from their employment by the Russian authorities, and the absentee and Zalcmanis both obtained employment as gardeners, working together at all times. On June 14, 1941, Zalcmanis learned that both he and the absentee, together with a host of others, were to be arrested that night, after which they were to be deported. The witness communicated with the absentee by telephone and implored him not to return to his home. Zalcmanis himself literally took to the woods and did not return to Riga for several weeks. On his return, he spoke to the absentee's wife and family and they informed him that the absentee had remained away from his home until early morning. On June 15th, when the absentee reached his home the Russian officials were waiting for him, and he was arrested. The following day there was a mass deportation from Riga to what was generally believed to be a concentration camp in Siberia. The witness further testified that the absentee was then suffering from a serious heart ailment and experienced much difficulty breathing. There has been no communication from the absentee since that time, and all efforts to locate him have proved unavailing. That is the appalling story.

There was introduced in evidence the applicable sections of the Latvian law as it existed at the time of the invasion of that hapless land. Under such law, the Latvian courts were empowered to declare a person dead " * * * if he were on a ship or plane which went down or if he was in some other mortal danger and disappeared since that time. * * * In such cases petitions may be filed after three years, * * * from the moment of danger in the case of other mortal danger."

After careful consideration of all the facts and surrounding circumstances, the Surrogate, applying the Latvian law, and in the absence of any evidence to the contrary, finds that in June, 1941, the absentee was in mortal danger, disappeared, and has

not been heard of since. More than three years have elapsed since such disappearance. Accordingly, the Surrogate finds that the absentee is now dead.

My learned colleague, Surrogate DELEHANTY, made a like finding in the *Matter of Grauds* (189 Misc. 861). In that case the absentee disappeared at the same time and under circumstances similar to those attending Jansons' vanishment.

The facts here present a different problem than that confronting Surrogate DELEHANTY in *Matter of Elias* (189 Misc. 279), and the case also differs from the situation dealt with by this court in *Matter of Magre* (189 Misc. 246). In those cases there was received in evidence presumptive death certificates issued by a competent authority of the absentees' domiciles or from the place where the absentee disappeared. Here, however, no application could be made in the country of domicile for such a certificate because Latvia is still subjugated by the invading forces. More than that, the action of occupation and consequent domination has not been recognized by our Government.

Predicated on the evidence, the court further finds that the decedent was survived by a widow, Gertrude Jansons, and two daughters, Asja-Vivna Jansons and Lorena Jansons. In fixing the amount to which these persons are entitled to inherit, the court will apply the Latvian law of inheritance. Under sections 392 and 393 of the Latvian Civil Law, where a decedent dies intestate leaving less than four children, his widow receives a share of the estate equal to that of a child. Applying that law, therefore, to this situation, the decedent's widow and two children would each be entitled to one third of the net estate.

The application for letters of administration is granted, and letters are directed to issue to the Public Administrator.

Submit decree on notice accordingly.