In the Matter of the Accounting of ANNA SIUSIS, as Administratrix of the Estate of KAZIMIR A. SIUSIS, Deceased.

Surrogate's Court, Queens County, January 16, 1950.

*Jacob Mishler* for administratrix.

*Irwin Pakula,* special guardian for Tekla Kleva and others.

*Thomas S. Agresta,* special guardian for William Siusis.

SAVARESE, S.   In this accounting proceeding it appears that the decedent died on October 20, 1947, and was survived by his widow but no issue.   His mother predeceased him, but it is not definitely known whether his father survived.   If he survived, the father would be entitled to the proceeds of a savings bank trust account of $6,876.14 in addition to one half of the distributable estate in excess of $5,000.   If he did not survive, the bank account referred to became an asset of the estate and decedent's brother and sisters would be entitled to one half the distributable estate in excess of $10,000.

At the trial it was established that decedent's father was born in Lithuania July 2, 1862.   Decedent, who was a resident of this country at the time, received a letter from a sister residing in Lithuania with their father which was evidently mailed within one or two months after July 15, 1939.   In the letter the sister related that decedent's father had fallen off the roof of his house

while he was fixing it, and that he had hurt himself rather badly. Up to that time decedent had been in constant communication with his father and four of his sisters residing in Lithuania. He received no further word from them thereafter, although he continued to write. Since his death the widow and her attorney have made the most diligent efforts possible under the circumstances to discover the existence and whereabouts of decedent's relatives in Lithuania without success. They enlisted the aid of the attorney for the Lithuanian Consul General in New York and of the attorney for the Soviet Consul who purported to represent Lithuanian nationals. Despite their obvious monetary interest in discovering information concerning the survivorship of decedent's father, they have not come forward with any proof. There has of course been due publication of the citation in this proceeding.

The court can take judicial notice of the fact that World War II broke out in Europe on September 1, 1939, when Germany and the Union of Soviet Socialist Republics invaded Poland. Lithuania, although not immediately at war, was virtually cut off from normal communications with the outside world. In June, 1940, the U. S. S. R. occupied the Baltic states and purported to annex them in July, 1940, although the United States has never granted diplomatic recognition to these seizures. In June, 1941, Germany attacked the U. S. S. R. and invaded Lithuania. The Nazis occupied the country until the Red Army recaptured it in the fall of 1944. The communists have been in *de facto* control of the country ever since.

In addition to the fact that the country where decedent's father lived was a battleground three times within five years after the last communication from him, the court can also judicially notice the policies of persecution and extermination practiced by the Nazis and communists alike against individuals and groups because of their race, religion, nationality, political beliefs, or for no reason at all. These policies were pursued in their own countries and within conquered territories. (See *Matter of Grauds,* 189 Misc. 861; *Matter of Jansons,* 189 Misc. 554, and *Matter of Frankel,* 196 Misc. 268. Cf. *Matter of Elias,* 189 Misc. 279; *Matter of Magre,* 189 Misc. 246, and *Matter of Hartog,* 194 Misc. 931.)

No word has been received from or concerning decedent's father since 1939 at which time he was seventy-seven years old and had sustained serious injuries in a fall. While lack of communication might normally be explained by the existence of a state of war and by the subsequent strained relations between

the U. S. S. R. and this country, under the circumstances of this case the court feels justified in applying the presumption of death from seven years' unexplained absence. (Civ. Prac. Act, § 341; *Butler* v. *Mutual Life Ins. Co.,* 225 N. Y. 197.) The court has considered the age and health of the absentee, together with the realities of the invasions and persecutions existing at his domicile during the intervening years. In *Matter of Frankel* (*supra*), Surrogate Frankenthaler found that legatees residing in Lithuania who had not been heard from since 1941 would, in 1949, be presumed to have predeceased a testator who died in September, 1944. It is not necessary for this court to fix a date of death earlier than the expiration of the seven-year period, for in this case the period had expired prior to the death of the decedent. The court finds upon all the evidence that decedent's father predeceased him. Distribution will be made accordingly.

Compensation of counsel for all services rendered to the estate up to and including the entry and execution of the decree herein is fixed and allowed in the sum requested, plus his out-of-pocket disbursements of $24.75. Account settled. Submit decree on notice.