Samuel P. Dunn and Others, as Trustees under the Last Will and Testament of Jacob Travis, Deceased, Respondents, *v.* James Harvey Travis, Appellant, Impleaded with Others.

*Presumption of death from prolonged absence merely — not indulged for the purpose of distributing the share of an estate to which the absentee was entitled.*

A beneficiary under a will, in 1852, when sixteen years of age, shipped at New Bedford on a whaler, left his ship in New Zealand in 1855, and was never heard from thereafter. It did not appear that, during all the time he was on the ship, he ever communicated with his family, or that such relations existed between him and his family as would induce him to correspond with the family or give them information as to his whereabouts, or that he expected an inheritance as the child of a deceased cousin of a rich testator, of whose existence he was not shown to have been aware.

It was not shown that his family made any actual effort to ascertain whether he was dead or alive until 1886, which was after the death of the testator, when inquiries were made, which, however, were not directed to New Zealand, the place at which he was last known to be alive.

*Held,* that it was proper to refuse to distribute his share of the estate upon the mere presumption that he had died without issue, in the absence of more satisfactory proof of diligent inquiry at the proper place as to that fact.

Appeal by the defendant, James Harvey Travis, from that portion of a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 5th day of February, 1895, upon the report of a referee, which adjudges that the moneys in the hands of the plaintiffs to be distributed to the parties interested therein should be divided into 390 equal parts, and that it is unknown who is the person entitled to 30 of said parts, and directing that the plaintiffs pay the same into the treasury of the State of New York.

*John Berry,* for the appellant.

*Wilson M. Powell, Jr.,* for the respondents.

PATTERSON, J. :

The plaintiffs, trustees under the last will and testament of Jacob Travis, deceased, brought this action setting forth in their complaint, among other things, that in the distribution of the residuary estate of their testator, under the provisions of his will, various questions and doubts had arisen or would arise respecting such distribution, and the aid and instruction of the court was sought in the ascertainment of the rights of the various distributees entitled to that residuary estate. Construction of the will was sought as to such distribution and the court was asked to declare who were entitled to share in the residuary estate. A great many persons were made parties defendant, and among others, the surviving children of Jacob Travis, a cousin of the testator, including one "James Travis, if living, and the executors, administrators, legal representatives, widow, devisees, heirs at law and next of kin of said James Travis, if deceased, who are unknown to plaintiffs." The accounts of the plaintiffs of the residuary estate were brought into the action for settlement. Answers were interposed by the defendants, and among them one by James Harvey Travis, who was a son of William Travis, a brother of the testator. Upon the issues joined by all the pleadings, construction was given to the will of the testator by a referee, who found that the residuary estate was divisible into 390 parts, and he adjudged that it should be distributed in certain proportions among various persons entitled thereto under the 14th clause of the will; that thirty three-hundred-ninetieths, or one-thirteenth, of the whole residuary estate belonged to one James Travis, a son of the testator's cousin Jacob Travis; and that such one-thirteenth should be deposited with the Comptroller of the State of New York, it not appearing whether such James Travis was alive or dead, or whether he left children who would take by representation the share to which he would be entitled had he survived the testator. The 14th clause of the will by which the residuary estate was disposed of, reads as follows :

"*Fourteenth.* At the death of my said wife, Helen, and my said daughter Josephine Louisa, I direct my executors to convert my

entire estate then remaining, real and personal, into money. And I hereby authorize and empower them to sell such real estate at public or private sale for the best prices that can be obtained and to execute and deliver good and sufficient deeds of conveyance therefor. And I will, order and direct that all of said proceeds of said rest, residue and remainder of my estate be divided among and paid over, share and share alike, (*per capita* and not *per stirpes*), to my said granddaughter Nelly Wiley; my nephew Jacob Ryerson; and the children of my brother John Travis; and the children of my deceased brother William Travis; and the children of my deceased cousin Jacob Travis, absolutely, and if any one of said children shall have died leaving issue, such issue to take by representation the share of the one so dying."

All parties to the suit appear to be content with the disposition of the residuary estate made by the referee and the judgment entered in accordance therewith, except James Harvey Travis, the appellant, who insists that the referee should have found that the one-thirteenth directed to be deposited with the Comptroller of the State of New York should be distributed among the other persons entitled under the 14th clause, it being claimed that James Travis (the son of the testator's deceased cousin Jacob Travis) was presumed to be dead without issue at the time of the death of the testator. The will of Jacob Travis, the testator, was executed in October, 1883; he died in August, 1884, and his will was admitted to probate in September, 1884. Among the children of his cousin Jacob Travis, mentioned in the 14th clause, was James Travis, who in 1852, being about sixteen years of age, shipped at New Bedford on a ship bound on a whaling voyage and he left that ship at the Bay of Islands in New Zealand in 1855, nearly thirty years before the death of the testator. Since that time he has never been heard from. The appellant contends that James Travis was presumably dead without issue at the time of the death of the testator, and that, therefore, the share of the residuary estate which has been reserved should have been distributed by the judgment entered herein and that the referee should have found that he, James Travis, was either dead or alive when the report was made in this action.

The argument of the appellant proceeds upon the theory that there is in the record sufficient proof to require the application of

the presumption of death after seven years' absence. The last that was heard or known of James Travis was in 1855, when he left the whaling ship at a port in New Zealand. There is a presumption of law that he was alive until 1862; the appellant contends that the presumption of life was then displaced by the presumption of death, but the latter presumption is one which is not self-effective, but is only applicable under conditions well recognized in the adjudicated cases. The history of the presumption of life or of death of an absent person is very instructively given in the opinion of Surrogate BRADFORD in the case of *Eagle* v. *Emmet* (4 Bradf. 117), and in speaking of the two presumptions, the learned judge remarks that the practical effect of these two rules, if both are to be taken as subsisting, is that whenever the law is invoked as to rights dependent upon the life or death of an absent party, he is to be deemed as living until the seven years have expired, and after that is to be deemed as dead; but that is subject to the qualification that his departure was under such circumstances as would indicate that he would communicate with his relatives left behind him, and that they had made reasonable and diligent inquiry as to his whereabouts at the last place at which he was known to be alive. In *Davie* v. *Briggs* (97 U. S. 628) the court says : " The general rule undoubtedly is that ' a person shown not to have been heard of for seven years by those (if any) who if he had been alive would naturally have heard of him, is presumed to be dead unless the circumstances of the case are such as to account for his not being heard of without assuming his death.' "

The difficulty in the present case is not with the presumption, but with its application. This youth shipped under the name of James Wilson, that being the name of his stepfather; he went to New Bedford and started upon the adventurous life of a whaler ; he left his ship in New Zealand in 1855. It is not shown that during the whole three years he was on that ship he ever communicated with any member of his family. It is assumed that his leaving the ship was a desertion. There is nothing in the record to show that any actual effort was made on the part of any one of his family to ascertain whether he was alive or dead until 1886. There are some vague statements that his mother and others made inquiries after the return of the ship on which he sailed, but that is so utterly general

that it proves nothing. When this testator died and it was ascertained that the missing person was interested in the estate, inquiries were set afoot in 1886, but singularly enough they were not directed to New Zealand, the place at which he was last known to be alive. There is nothing in the record to show that such relations existed between this absent man and his family as would induce him to correspond with them or give them information as to his whereabouts. There is nothing to show that he expected an inheritance, as the child of a deceased cousin of a rich testator, of whose existence he might not even have been aware.

We think the referee was right in refusing to distribute this share upon a mere "*presumption of death without issue*" in the absence of more satisfactory proof of diligent inquiry in the proper place as to his death without issue; for by the provision of the 14th clause of the will above quoted, there was a substitutionary gift, and while isolated cases may be found to the effect that after thirty or forty years a presumption of death without issue of a person not heard from will be indulged in, the tendency of the courts in modern times is quite to the contrary, as is illustrated by the cases of *Vought* v. *Williams* (120 N. Y. 253) and *Dworsky* v. *Arndtstein* (29 App. Div. 274). The disposition made by the learned referee of the one-thirteenth of the residuary estate referred to was, under the circumstances, judicious and proper. There is nothing in the judgment entered upon his report which prejudices the rights of any one to that share if it has lapsed. On the presentation of proper proof, in a proper proceeding, the reserved fund may be distributed and the only effect of the judgment entered is to preserve the fund directed to be deposited with the comptroller until that proper proof can be made.

The judgment should be affirmed, with costs.

RUMSEY, INGRAHAM and HATCH, JJ., concurred.

Judgment affirmed, with costs.