The judgment of conviction should be reversed and a new trial ordered.

GRAY, WILLARD BARTLETT, HOGAN and MILLER, JJ., concur; CUDDEBACK, J., dissents; WERNER, J., absent.

Judgment of conviction reversed, etc.

---

GUSTAVE CERF, Respondent, *v.* LOUISA B. DIENER, Appellant.

Vendor and purchaser — specific performance — proceeding, submitted upon agreed statement of facts, to compel purchaser to perform contract to purchase real estate — when facts insufficient to sustain judgment directing specific performance — presumption of death — character and sufficiency of evidence to sustain such presumption.

1. A purchaser under a contract for the sale of real estate is entitled to a marketable title and will not be compelled to take property the possession of which he may be obliged to defend by litigation, or to receive a title that is subject to probable claims by another, or that will not be reasonably free from any doubt which will interfere with its market value.

2. Where a defect in the record title can only be supplied by resort to parol evidence, and the title may depend on questions of fact, the purchaser will not be required to perform his contract, and he may reject title which an ordinarily prudent person would be justified in hesitating to accept or loan money on.

3. In a proceeding to compel the performance of a contract for the purchase of real estate, submitted on an agreed statement of facts, the defendant had refused to perform upon the ground that

there was an outstanding tenancy by the curtesy, in part of the premises, held by one whose death was in question. The facts as to the death of such tenant as agreed upon are simply evidentiary, and leave it to be determined as a question of fact and as a matter of judgment whether the defendant ought to be compelled to accept the title. *Held,* that a case was not presented for submission to and disposition by the Appellate Division, and that the judgment directing specific performance should be reversed and the proceedings dismissed without prejudice to an action.

*Cerf* v. *Diener,* 148 App. Div. 150, reversed.

(Submitted January 9, 1914; decided February 3, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 7, 1912, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harold Swain, Frederick A. Southworth* and *Edwin W. Cady* for appellant. The title in question is unmarketable. A hostile claim by Matthew Tighe of an interest in the property is not an impossible or negligible contingency. The court should not shift the burden of an unmarketable title from plaintiff to defendant. (*Hammond* v. *Inloes,* 4 Md. 138; *Sprigg* v. *Moale,* 28 Md. 497; *Young* v. *Shulenberg,* 165 N. Y. 385; *Springer* v. *Shavender,* 116 N. C. 12; 118 N. C. 33; *Devlin* v. *Comrs.,* 101 Penn. St. 273; *Schleicher* v. *Gutbrod,* 34 S. W. Rep. 657; *Melie* v. *Simmons,* 45 Wis. 334; *Moore* v. *Smith,* 11 Rich. 569; *Duncan* v. *Stewart,* 25 Ala. 408; *Jochmusen* v. *Suffolk Sav. Bank,* 85 Mass. 87; *D'Arusment* v. *Jones,* 72 Tenn. 251.) No facts are shown from which the presumption of death would be drawn even in a proceeding for the appointment of an administrator for Matthew Tighe or for a probate of heirship. (*Dworsky* v. *Arndstein,* 29 App. Div. 278; *Matter of Miller,* 30 N. Y. S. R. 212; *Dunn* v. *Travis,* 56 App. Div. 317; *Donovan* v.

*Twist,* 105 App. Div. 171; *Keller* v. *Stuck,* 4 Redf. 298; *Matter of Bd. of Education,* 173 N. Y. 326; *McCartee* v. *Camel,* 1 Barb. Ch. 455; *Matter of Tobin's Estate,* 15 N. Y. S. R. 749; *Inness* v. *Campbell,* 1 Rawle, 373; *Hitz* v. *Ahlgren,* 170 Ill. 60.)

*Benjamin Reass* for respondent. Under the circumstances herein Matthew Tighe not having been heard from for over seven years, *i. e.,* twenty-three years, and search having failed to elicit any information concerning him, a presumption arises that he is dead. (*Matter of Wagener,* 128 N. Y. Supp. 165; *Jackson ex rel. Van Buskirk.* v. *Claw,* 18 Johns. 347; *Eagle* v. *Emmet,* 4 Bradf. 117; *Matter of Sullivan,* 51 Hun, 378; *Barson* v. *Mulligan,* 191 N. Y. 306; *Matter of Board of Education,* 173 N. Y. 321; *Dunn* v. *Travis,* 56 App. Div. 317; *Karstens* v. *Karstens,* 20 Misc. Rep. 247; *Matter of Barrs,* 38 Misc. Rep. 355; *Czech* v. *Bean,* 35 Misc. Rep. 402; *Matter of Sullivan,* 58 Hun, 378; *Cambrelling* v. *Purton,* 125 N. Y. 610; *Ferry* v. *Sampson,* 112 N. Y. 415; *McNulty* v. *Mitchell,* 4 Misc. Rep. 293; *Davie* v. *Briggs,* 97 U. S. 628; *McComb* v. *Wright,* 5 Johns. Ch. 264; *Jackson* v. *Claw,* 18 Johns. 347.)

HISCOCK, J. In this controversy the plaintiff seeks to compel the defendant to carry out a contract for the purchase of real estate, and judgment has been rendered requiring her so to do on what has been assumed to be an agreed statement of the facts pertaining to the matter.

The defendant has resisted the attempt on the ground that there was vested in one Matthew Tighe an outstanding tenancy by the curtesy in a portion of the premises; and the inquiry whether this position is tenable depends on the further question whether such a strong presumption of the death of said Tighe has been created by the facts set forth in the submitted statement as to render the title marketable.

The allegations of the statement bearing on this subject are as follows:

"Said Matthew and Catherine Tighe were married in 1857 in Brooklyn, New York. About twenty-five years ago, Tighe left his wife and children, who were all residing then at St. Louis, Missouri. At the time he left the family he was forty-seven years of age. He was then on the best of terms with his wife and children and was in good health. He then told his wife that he was going West to Colorado or Arizona to go into the mining business. During the first two years of his absence, that is about twenty-three years ago, letters and remittances of money were received by Mrs. Catherine Tighe. The best recollection of a daughter of said Matthew Tighe and Catherine Tighe, which daughter had no correspondence with her father during his absence, is that said letters and remittances came from Colorado. Said daughter was fifteen years of age at the time her father left home for the last time. Thereafter all remittances as well as any and all communications suddenly stopped without any explanation. No communication has been had at any time with any person who was acquainted with or saw said Matthew after he left his family.

"Eighteen years ago Matthew Tighe's eldest married daughter and son-in-law went to Denver, Colorado, in an effort to locate the father. They advertised in the newspapers and sought for traces of him, but were entirely unsuccessful.

"The further facts are that Tighe had lived with the family for about a year or so preceding his last departure. His prior absence had been occasioned by his mining interests, also out West. He had been mining and speculating in the West for about a year or so before he left his home the last time. Prior to the commencement of his mining operations he was making a fairly good living and took care of and was devoted to his family. His first and only other absence from the family lasted for a

couple of years. Members of Tighe's family have no absolute knowledge of whether he is dead or alive. Two daughters still reside at St. Louis, Missouri. A son has resided in Chicago, Illinois, since 1890. Catherine Tighe and another daughter continued to reside in St. Louis, Missouri, after the departure of Matthew Tighe, until their subsequent deaths.

" In 1909, the plaintiff made various inquiries of the Chief of Police and Postmaster of Denver, Colorado, and of the Board of Health, Postmaster and Chief of Police at St. Louis, Mo., as to the address, existence or death of Matthew Tighe, but was unable to locate him or obtain any evidence of his present existence or death."

It will be noted that this agreed statement does not set forth any ultimate fact establishing the death of Tighe, but only a number of evidentiary facts which it is claimed indicate that it is extremely improbable that said Tighe is still alive.

As it seems to me, the two important facts which are set forth in the statement tending to establish such presumption are, *first*, that if still alive Tighe would have reached an age of seventy-two years, and which age certainly would not be extraordinary, and *second*, that at the time of his departure he was devoted to his family and that after two years, during which he sent letters and remittances of money, no further communications or information were received from or concerning him. While such termination of relations was unusual, we know that in the cases of men at least it is often caused by other reasons than death, and any extraordinary aspect of these occurrences is somewhat modified by the fact that apparently no effort was made by Tighe's family to seek an explanation of the discontinuance of his communications or to locate him for a period of upwards of seven years.

It will be noted on the other side that there is an absence of those facts which, while not controlling, have

come to be regarded as of great importance in establishing the presumption of death of an absent person.

At the time Tighe disappeared he was not in any desperate condition either of health or circumstances, and, although the learned Appellate Division takes a somewhat different view, we do not think that when going to Colorado or Arizona he entered a territory of peril and danger such as is meant by the cases dealing with that feature of the disappearance of an individual.

At the time he departed the present interest in controversy had not accrued, and so far as appears he had no interest in any other property or estate which would render it improbable that if alive he would have remained away leaving such property interests to go to others through abandonment. Neither do we think that there is very satisfactory evidence of such a search for him as has been regarded important in the cases which we have in mind. He announced his departure in the alternative for Colorado or Arizona. A daughter, who was a young girl at that time, thinks that letters were received from him in Colorado, and some effort was made to locate him there. No effort was made to locate him in Arizona and not a very effective one, as we think, in Colorado.

It is well settled that such a purchaser of real estate as the defendant is entitled to a marketable title and that he will not be compelled to take property the possession of which he may be obliged to defend by litigation, or to receive a title that is subject to probable claims by another, so that it will not be reasonably free from any doubt which would interfere with its market value. In another form the general rule is stated that where a defect in the record title can only be supplied by resort to parol evidence and title may depend on questions of fact, the purchaser will not be required to perform his contract and that he may reject a title which an ordinarily prudent person would be justified in hesitating to accept or loan

11

money on. (*Ferry* v. *Sampson*, 112 N. Y. 415; *Wanser* v. *De Nyse*, 188 N. Y. 378.)

While it is possible that the trial court as a matter of discretion and fact would be entitled to find on the facts set forth in this statement that it was so probable that Tighe was dead that the proffered title would be regarded as marketable and the purchaser compelled to accept it, we think that this is a proposition concerning which different inferences may be drawn and that it cannot be said as matter of law that the title is thus marketable. (*Ferry* v. *Sampson, supra; Wanser* v. *De Nyse, supra; Vought* v. *Williams*, 120 N. Y. 253; *Dunn* v. *Travis*, 56 App. Div. 317; *Matter of Board of Education of N. Y.*, 173 N. Y. 321; *Hitz* v. *Ahlgren*, 170 Ill. 61.)

If it be thus true that the facts set forth in the agreed statement were simply evidentiary and left it to be determined as a question of fact and as a matter of judgment whether the defendant ought to be compelled to accept the title, then a case was not presented for disposition by the Appellate Division within the provisions relating to the submission of controversies; and it follows that the judgment appealed from should be reversed and the proceedings dismissed without prejudice to an action and without costs to either party. (*Marx* v. *Brogan*, 188 N. Y. 431.)

WILLARD BARTLETT, Ch. J., WERNER, COLLIN and CUDDEBACK, JJ., concur; CHASE, J., dissents; MILLER, J., not sitting.

Judgment reversed, etc.