Henry S. Chesebro, Respondent, v. Albert A. Moers, Appellant.

Vendor and purchaser — specific performance — when purchaser not required to perform — when violation of restrictive covenants renders title unmarketable — negative easements may be enforced irrespective of order of conveyances — when apparent incumbrance may be removed only by resort to parol evidence purchaser not required to perform.

1. To entitle a vendor to specific performance he must be able to tender a marketable title. A purchaser is not compelled to take property, the possession of which he may be obliged to defend by litigation. He should have a title that will enable him to hold the land purchased free from probable claim by another; a title which, if he wishes to sell, would be reasonably free from doubt. If it be not so, then specific performance should be refused.

2. Where there is a defect in the record title to land which can be supplied only by resort to parol evidence, and the title may depend upon questions of fact, the general rule is that the purchaser will not be required to perform his contract. The same rule applies to apparent incumbrances.

3. Where a restrictive covenant provides, " Sixth. No building, nor any portion or projection thereof, shall be erected or permitted within 50 feet of any front street, nor within 10 feet of any boundary line

on either side of any lot, nor within 5 feet of any rear lot line except * * *. Any two adjoining plot owners may agree in writing to the erection of a garage having one side on the boundary line," the location of a dwelling more than five feet nearer the front street than is permitted and the erection of a garage, a portion of which touches the line of the adjoining lot, without the written consent of the adjoining owner, clearly violates said covenant and renders the title unmarketable.

4. A contention that the restriction as to location of the dwelling does not apply because it was erected before the declaration of restrictions was filed cannot be upheld. The restrictive covenant is directed against *maintenance* as well as location and a violation thereof may be restrained at the suit of one who owns property or for whose benefit the restriction was established, irrespective of whether there was privity either of estate or of contract between the parties, or whether an action at law were maintainable.

5. An oral agreement between the adjoining lot owners, as to the location of the garage, does not alter the effect of the violation of the covenant on the marketability of the title, where it may fairly be inferred that such oral agreement may not be enforcible against subsequent owners of the adjoining lot.

*Chesebro* v. *Moers*, 196 App. Div. 980, reversed.

(Argued January 25, 1922; decided February 28, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 1, 1921, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*James L. Bishop* and *Robert Moers* for appellant. The other lot owners have a right of action against the owner of the lot in question by reason of the violations of the restrictive agreement. (*Korn* v. *Campbell,* 192 N. Y. 490.) The restriction as to the location of buildings has not been waived or annulled by the company. (*Sanford* v. *Brown Brothers Co.,* 208 N. Y. 90; *Schoellkopf* v. *Coatsworth,* 166 N. Y. 77, 84; *Simon* v. *Etgen,* 152 App. Div. 399; *Russell* v. *Allerton,* 108 N. Y. 288; *Irving* v. *Campbell,* 121 N. Y. 353; *Fossume* v. *Requa,* 218 N. Y. 339; *Dethloff*

v. *Voit,* 172 App. Div. 201; *Hellen* v. *Cohen,* 154 N. Y. 299; *McPherson* v. *Schade,* 149 N. Y. 16.) There has been no waiver by other lot owners. (*Pryor* v. *City of Buffalo,* 197 N. Y. 123; *Fossume* v. *Requa,* 218 N. Y. 339; *Korn* v. *Campbell,* 192 N. Y. 490; *Bull* v. *Burton,* 227 N. Y. 101.) The plaintiff could not convey a marketable title. (*Fourth Presb. Church* v. *Steiner,* 79 Hun, 314; *C. P. Assn.* v. *Gourand,* 224 N. Y. 343; *Cerf* v. *Diener,* 210 N. Y. 156; *Dethloff* v. *Voit,* 172 App. Div. 201; *Ref. P. Dutch Church* v. *M. A. B. Co.,* 214 N. Y. 272; *Tausk* v. *Siry,* 110 Misc. Rep. 514; *McPherson* v. *Schade,* 149 N. Y. 21; *Kountze* v. *Helmuth,* 67 Hun, 343; 140 N. Y. 432; *Blanck* v. *Sadlier,* 153 N. Y. 299.) Equitable relief by way of specific performance should not be awarded. (*Winne* v. *Winne,* 166 N. Y. 263; *Seymour* v. *Delancy,* 6 Johns. Ch. 222; *McPherson* v. *Schade,* 149 N. Y. 16; *Heller* v. *Cohen,* 154 N. Y. 299, 306; *Stitt* v. *Ward,* 142 App. Div. 626; *Byrne* v. *Fremont Realty Co.,* 120 App. Div. 692.)

*James E. Kelly* for respondent. The law favors the free and unobstructed use of property. (*Schoonmaker* v. *Heckscher,* 171 App. Div. 148; *R. P. D. Church* v. *M. A. Bldg. Co.,* 214 N. Y. 268.)

McLAUGHLIN, J. The Great Neck Shores Corporation owned a tract of land at Great Neck, Nassau county, New York, which it divided, as shown on a map, into thirty-four lots, and of which at the time of the commencement of this action, twenty-one had been sold. All of the lots were subject to certain restrictions as to location and character of buildings. The map and restrictions were filed in the Nassau county clerk's office on the 10th of October, 1913. On September 27, 1920, the parties to this action entered into a written contract for the purchase and sale of lot number twelve, as laid down on the map. The lot was to be conveyed by warranty

deed, " free from all encumbrance subject to covenants and restrictions in ' Declaration of Restrictions ' dated Sept. 30, 1913 filed in Nassau County Clerk's office October 10, 1913; and to all covenants, agreements and restrictions contained in any other instruments of record affecting said premises. And to said covenants running with the land  *   *   *." The purchase price was $42,500, of which $4,250 was paid on the signing of the contract, $20,500 by assuming two mortgages, and $17,750 to be paid on delivery of the deed on October 18, 1920. The date for the delivery of the deed was subsequently postponed to October 27, 1920. On that date plaintiff tendered a deed of the property, which defendant refused to accept, upon the ground that the title was not marketable because buildings upon the lot violated certain restrictive covenants. This action was thereupon brought to compel him to specifically perform. The answer denied that the plaintiff could give a good title, and set up as an affirmative defense and by way of counterclaim that the title tendered was unmarketable, and demanded judgment for the return of $4,250 paid at the time the contract was executed.

At the trial it appeared, as shown by the findings, that there is a dwelling on the lot, a substantial portion of which is located 44.83 feet from the front street line and in the rear of the lot is a garage located within five feet of the rear lot line and a portion of which touches the line of an adjoining lot.

The trial court found the location of these buildings did not render the title unmarketable and that the deed tendered, when delivered to defendant, would convey a good and marketable title. From a judgment entered to this effect an appeal was taken to the Appellate Division, where the same was unanimously affirmed. Appeal by permission of this court followed.

Does the location of the dwelling and garage render the title unmarketable? The answer to the question depends

upon the restrictions imposed as to the location or maintenance of buildings.

The declaration of restrictions provided, among other things, that: " The property shown on said map is held and shall be conveyed subject to the restrictions, conditions, covenants, charges and agreements set forth in the various subdivisions of this Declaration, to wit:

" *First.* The restrictions, conditions, covenants, charges, and agreements set forth in this Declaration shall affect all of the property shown on the aforesaid map.    *    *    *

" *Sixth.* No building, nor any portion or projection thereof, shall be erected or permitted within 50 feet of any front street, nor within 10 feet of any boundary line on either side of any lot, nor within 5 feet of any rear lot line except    *    *    *.   Any two adjoining plot owners may agree in writing to the erection of a garage having one side on the boundary line.    *    *    *

" *Fifteenth.* All of the restrictions, conditions, covenants, charges and agreements contained herein, shall run with the land and continue until January 1, 1930,    *    *    *.

" *Sixteenth.* The provisions herein contained shall bind and inure to the benefit of and be enforceable by the Company or by the owner or owners of any property shown on said map, their legal representatives, heirs, successors and assigns, and failure by the Company or any property owners to enforce any of such restrictions, conditions, covenants, charges and agreements herein contained, shall in no event be deemed a waiver of the right to do so thereafter."

The location of the dwelling and garage is a clear violation of the sixth restrictive covenant.   The dwelling is more than five feet nearer the front street than is permitted and the owner of the adjoining lot has not agreed in writing that the garage might touch on the boundary line.   The violation of this restrictive covenant, in my opinion, renders the title unmarketable.   It certainly is not free from doubt.   Under the sixteenth

declaration of restrictions, the provision that the restrictions should be for the benefit of and enforcible by the owner of any property shown on the map enables an owner of any of the lots to institute a proceeding to have the dwelling moved back so that it will not be less than fifty feet from the front street. The fact that proceedings have not heretofore been instituted for that purpose does not prevent or in any way interfere with a proceeding being hereafter instituted. Delay in moving does not establish a waiver. The wording of the covenant specifically so provides.

But it is urged that the restriction as to location of the dwelling does not apply, because it was constructed before the declaration of restrictions was filed. I am unable to appreciate the force of the suggestion, since the restrictive covenant is directed against *maintenance* as well as location. The language is: "No building, nor any portion or projection thereof, shall be erected or permitted." It is quite evident, when the corporation divided the tract into lots according to the map, and filed with the map the declaration of restrictions, and thereafter sold lots according to the map and restrictions, it limited not only the construction of buildings, but their maintenance. The violation, therefore, of the restrictive covenant may be restrained at the suit of one who owns property, or for whose benefit the restriction was established, irrespective of whether there were privity either of estate or of contract between the parties, or whether an action at law were maintainable. It is well settled that where a uniform plan of improvement restricting the use to which each parcel of a tract can be put is adopted, and parcels are sold with reference thereto, mutual negative easements are created irrespective of the order of the conveyances. (*Equitable Life Assur. Society* v. *Brennan*, 148 N. Y. 661; *Sharp* v. *Ropes*, 110 Mass. 381.) If the owner of one lot can permit a dwelling

to be erected or maintained nearer the front street than the covenant provides, then other owners of lots can do likewise, an easy way to wipe out the covenant and thus destroy the entire scheme which the owner had when the tract was divided into lots, and in view of which it is fair to assume purchases were made. The negative covenant was for the benefit of lot owners. It was so intended and the owner of any lot has the right to see that such covenant is kept and enforced. (*Booth* v. *Knipe,* 225 N. Y. 390; *Korn* v. *Campbell,* 192 N. Y. 490; *Hano* v. *Bigelow,* 155 Mass. 341; *Oliver* v. *Kalick,* 223 Mass. 252; *Hartt* v. *Rueter,* 223 Mass. 207.)

To entitle a vendor to specific performance he must be able to tender a marketable title. A purchaser is not compelled to take property, the possession of which he may be obliged to defend by litigation. (*McPherson* v. *Schade,* 149 N. Y. 16.) He should have a title that will enable him to hold the land purchased free from probable claim by another; a title which, if he wishes to sell, would be reasonably free from doubt. If it be not so, then specific performance should be refused. (*Vought* v. *Williams,* 120 N. Y. 253; *Fleming* v. *Burnham,* 100 N. Y. 1.) The title to the lot in question, by reason of the location of the dwelling thereon, does not measure up to this requirement.

The location of the garage, I also think, renders the title unmarketable. The restrictive covenant provides that a garage could be located as is the one in question, provided there were an agreement in writing between the adjoining lot owners. There has been no such agreement. Any agreement, if one has been made, so far as appears, was oral and it is at least fairly to be inferred, might not be enforcible against subsequent owners of the adjoining lot. Where there is a defect in the record title to land which can be supplied only by resort to parole evidence, and the title may depend upon questions of fact, the general rule is that the purchaser

will not be required to perform his contract. (*Irving* v. *Campbell*, 121 N. Y. 353; *Holly* v. *Hirsch*, 135 N. Y. 590.) The same rule applies to apparent incumbrances. (*Moore* v. *Williams*, 115 N. Y. 586.)

I am of opinion, for the reasons stated, that the plaintiff cannot give a marketable title.

The judgments appealed from, therefore, should be reversed, the complaint dismissed, and judgment directed for the defendant on his counterclaim, with costs in all courts.

POUND, J. (dissenting). On September 27, 1920, the parties entered into a contract of purchase and sale of plot No. 12 on a map entitled " Grenwolde, Property of the Great Neck Shores Corporation, situated at Great Neck, Nassau County, New York." The map shows upwards of thirty plots laid out on attractive and symmet- rical lines. Some of the plots have been sold. The property, which had been conveyed to plaintiff by such corporation, was to be conveyed by warranty deed free from all incumbrances subject to the covenants and restrictions in a declaration of restrictions, made and executed by such corporation, dated September 30, 1913. The declaration and map reveal a plan to sell lots pursuant to building restrictions enforcible by any purchaser of a lot against any other lot owner who violates such restrictions. (*Korn* v. *Campbell*, 192 N. Y. 490.) The purchase price was $42,500. The purchaser refused to perform on his part on the ground that the vendor could not convey good and marketable title because of violations of certain restrictive covenants respecting the location of buildings. Whereupon plaintiff brought this action to compel specific performance of the contract.

The declaration of restrictions contains among others the following restrictive covenants: " No building, nor any portion or projection thereof, shall be erected or permitted within fifty feet of any front street nor within

ten feet of any boundary line on either side of any lot, nor within five feet of any rear lot line," but any two adjoining plot owners may agree in writing to the erection of a garage having one side on the boundary line.

It also provides: " Any particular restriction, condition, covenant or agreement herein contained, may be annulled, waived, changed or modified by the Company as to any property owned by it, and with the consent of the owner thereof, as to any property sold, provided the same can be done without injury to the purchasers."

The court found: " That the house erected upon said property extended to within 44.83 feet of the front at which said premises were located," and " That the garage erected upon said property extends to within five feet of the rear lot line of the lot of said premises and touches the same," but refused to find as requested by the defendant either: " That the said violations of restrictions injured the purchasers of other properties in said development," or " That no waiver of said violations of said restrictions by the Great Neck Shores Corporation or by any of the purchasers of lots was ever recorded or tendered to defendant," or " That the violation of said declaration of restrictions aforesaid rendered the title tendered unmarketable." It held that the deed tendered by plaintiff to defendant was a valid deed and " that said deed when delivered to defendant would convey a good marketable title to said Plot No. 12 on the terms of said contract."

Defendant must succeed if plaintiff cannot make out a marketable title. The question for determination in this court is whether, as matter of law, on the findings, the court has compelled the purchaser to subject himself to " a reasonable, decent probability of litigation " (ALDERSON, B., in Cattell v. Corrall, 4 Y. & C. Ex. 228, 237) at the suit of the purchasers of other restricted

lots. The court will not, to use a hackneyed phrase, compel the purchaser " to buy a law suit " or force him to take an unmarketable title. While it has no power to prevent a future attack on a good title or to insure a purchaser against litigation, specific performance may not be decreed unless the title is free from reasonable doubt. (*Crocker Point Assn.* v. *Gouraud,* 224 N. Y. 343.) But when it has been said in general terms that the purchaser cannot be required to complete the purchase if the use of the real property contracted for is substantially restricted, the court has had before it, not minor present violations of the character complained of here, but substantial restrictions upon the future use of the property. (*Bull* v. *Burton,* 227 N. Y. 101, 112.) This case, therefore, rests upon its own facts as to which there can be no serious dispute. If plaintiff's title to plot No. 12 is marketable, so far as incumbrances thereon are concerned, so that it may at all times and under all circumstances be forced on an unwilling purchaser after final judgment herein, specific performance should be decreed. (*Moore* v. *Williams,* 115 N. Y. 586, 593; *Irving* v. *Campbell,* 121 N. Y. 353; *Holly* v. *Hirsch,* 135 N. Y. 590.)

As indicated by the findings, the question arises in two particulars as to whether the restrictions have been technically violated: *First,* the house extends within 44.83 feet, that is 5.17 feet less than fifty feet from the front street; and, *secondly,* the garage is within five feet of the rear lot line. Plaintiff contends that as the house was built before the restrictions were placed upon plot No. 12, it is not subject to such restrictions. A question arises whether it may be permitted to remain in its present location without violating the restrictive covenant which is in terms not only against building within the fifty-foot limit but also against permitting the building to remain within such limit. " Erected or *permitted* " are the words of the covenant. But the difficulty of assuming that it was the

intention of the corporation to bind itself to move the house is almost, if not entirely, insuperable. No ground for saying that such was the intention suggests itself, as the words apply sensibly only to buildings subsequently erected.

No agreement in writing is offered as to the erection in the year 1916 of the garage having one side on the boundary line, but here the owner of the adjoining plot, No. 17, is the only person who can complain. By the terms of the declaration, he could consent *in writing* to the erection of the garage on the rear lot line. His garage is also located on the rear lot line and I am unable to comprehend what version of the rights of the parties could be put forth to challenge the appearance of actual consent or waiver or to insist upon the technicality of a written agreement.

Even if the declaration has actually been violated as to the location of the house, the corporation and the plaintiff have waived such violation. But their waiver is a nullity unless it may be said that no injury to the purchasers of other restricted lots has resulted. Restrictions of this nature would be of little value if the corporation and an individual lot owner might destroy the scheme for unity and symmetry of plan which make such restricted tracts desirable. How any such purchaser of another lot could establish in an action at law against the owner of plot No. 12, *first,* a violation of the restrictive covenant, and, *secondly,* money damages, is difficult, if not impossible to foresee. If such an action could be maintained the court would not compel specific performance. (*Bull* v. *Burton, supra.*) No suggestion is made that the market value of any other lot is less than it would be if the violations did not exist. The erection of a slaughter house, dance hall, livery stable or public garage and repair shop on one of the plots would tend to impair the value of other plots, but this slight deviation from the letter of the declaration could not have that effect,

even if it were found to be a violation of its fair intent and meaning.

The purchaser, it is urged, may be subject to a suit in equity for a mandatory injunction to compel the owner to move back the house. Again, assuming the fact of violation for the purpose of the argument, does the existence of this possibility, which should at least make the trial court cautious, permit it to force the title on the purchaser? That a court of equity should successfully be invoked to grant the remedy of injunction merely for the purpose of stopping a dubious violation which, in its nature, can harm no one in any justiciable sense, is inconceivable. Equity does not do inequity. The law favors the free and unrestricted use of property and does not look for reasons oppressively to enforce restrictions not within the plainly expressed intention of the parties. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311; *Bull* v. *Burton, supra.*)

Every title is in law and in fact either good or bad and equity will not compel a purchaser to take a bad title. A title may be doubtful because of the absence of parties who may be in a position to maintain either contention. At times it is difficult to foresee what action such parties may take, what evidence they may offer, what legal propositions they may put forth. When from the nature of things the court cannot be fully informed, it ought to doubt and, doubting, ought not to compel performance. But it is bound to do the best it can and decide what the law is if the facts are sufficiently developed to enable it to make a determination. As stated by HISCOCK, J., in *Reformed P. D. Church* v. *M. A. Bldg. Co.* (214 N. Y. 268, 279): " It seems to be the inalienable right of any person to start a lawsuit, but the court will not regard such possibility of action as a reason for refusing specific performance when a judgment is to be rendered which under the ordinary rule of *stare decisis* will control the determination of subsequent suits started for the same

purpose." Although if sitting in a trial court, in the exercise of discretion, we might be reluctant to grant the relief of specific performance, yet limited as we are to the review of questions of law, we may not refuse to uphold the determination of such court if the judgment rests on discretion. (*Cerf* v. *Diener*, 210 N. Y. 156, 162.)

That the court was powerless to make its judgment in this case may not consistently be held. The essential facts are not in dispute. The only doubt arises as to what relief others may seek to claim on the basis of such facts. The purchaser will not be left open to serious attacks by other persons. The contingency of successful attack is so remote as to be negligible.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN and ANDREWS, JJ., concur with McLAUGHLIN, J.; POUND, J., reads dissenting opinion, with whom CARDOZO and CRANE, JJ., concur.

Judgments reversed, etc.