No. 38,110

KENNETH L. LOHMEYER, *Appellant*, v. CARL A. BOWER, JR., ANNA S. BOWER and TED NEWCOMER, d/b/a Newcomer Agency, *Appellees*.

(227 P. 2d 102)

Opinion filed January 27, 1951.

*Roscoe W. Graves,* of Emporia, argued the cause and was on the briefs for the appellant.

*Richard Mankin,* of Emporia, argued the cause, and *James W. Putnam,* of Emporia, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J: This action originated in the district court of Lyon county when plaintiff filed a petition seeking to rescind a contract in which he had agreed to purchase certain real estate on the ground title tendered by the defendants was unmerchantable. The defendants Bower and Bower, husband and wife, answered contesting plaintiff's right to rescind and by cross-petition asked specific performance of the contract. The defendant Newcomer answered, stating he was an escrow agent under terms of the agreement, that he had no interest in the action except in that capacity and that he would abide and be governed by whatever decision was rendered by the court. The case was tried upon the pleadings and stipulated facts by the trial court which rendered judgment for the defendants generally and decreed specific performance of the contract. The plaintiff appeals from that judgment.

The pleadings are of little consequence and can be summarized by brief reference to salient features thereof.

Plaintiff's petition alleges execution of the contract whereby he agreed to purchase Lot 37 in Berkley Hills Addition in the city of Emporia and makes such contract a part of that pleading. It avers that after execution of the agreement it came to his attention that the house on the real estate therein described had been placed there in violation of Section 5-224 of the Ordinances of the city of Emporia in that the house was located within approximately 18 inches of the north line of such lot in violation of the ordinance providing that no frame building should be erected within 3 feet of a side or rear lot line. It further avers that after execution of the agreement it came to plaintiff's knowledge the dedication of the Berkeley Hills Addition requires that only a two story house should be erected on the lot described in the contract whereas the house located thereon

is a one story house. It then states the violations of the city ordi-. nance and the dedication restrictions were unknown to the plaintiff when he entered into the contract and that he would not have entered into such agreement if he had known thereof. It next alleges that after becoming aware of such violations plaintiff notified the defendants in writing thereof, demanded that he be released from his contract and that defendants refused such demand. Finally it charges that such violations made the title unmerchantable and asks that the agreement be canceled and set aside and that all moneys paid by plaintiff under its terms be refunded.

The answer of defendants Bower and Bower admits execution of the contract and denies generally all allegations of the petition. It specifically denies the house on Lot 37 violates Ordinance 5-224 or the restrictions contained in the dedication of the Berkley Hills Addition and alleges the restrictions in such dedication are of no force and effect because they were extinguished by sale of the property for taxes and that such ordinance is of no force and effect because it was repealed by one ordinance of such city, describing it, and conflicts with the provisions of another ordinance which is also described. Their cross-petition alleges performance of the contract, that plaintiff is in the possession of the property but has refused to pay the balance due on the purchase price, and that they are entitled to judgment for specific performance of the contract with directions to defendant Newcomer to pay them all sums paid him by plaintiff as escrow agent under its terms.

The contents of defendant Newcomer's answer have been heretofore referred to and require no further attention.

Further pleadings disclosed by the record are in the form of general denials and consist of a reply to the answer, an answer to the cross-petition, and a reply to plaintiff's answer to the cross-petition.

Pertinent provisions of the contract, entered into between the parties, essential to disposition of the issues raised by the pleadings, read:

"WITNESSETH, That in consideration of the stipulations herein contained, and the payments to be made by the second party as hereinafter specified, the first party hereby agrees to sell unto the second party the following described real estate, situated in the County of Lyon, State of Kansas, to-wit:

Lot numbered Thirty-seven (37) on Berkley Road in Berkley Hills Addition to the City of Emporia, according to the recorded plat thereof.

and to convey the above described real estate to the second party by Warranty Deed with an abstract of title, certified to date showing good merchantable

title or an Owners Policy of Title Insurance in the amount of the sale price, guaranteeing said title to party of the second part, free and clear of all en-cumbrances except special taxes subject, however, to all restrictions and easements of record applying to this property, it being understood that the first party shall have sufficient time to bring said abstract to date or obtain Report for Title Insurance and to correct any imperfections in the title if there be such imperfections.

.   .   .   .   .   .   .   .   .   .   .   .   .

"That the deed and/or other papers of transfer are to be executed at once by the first party and placed in escrow with Newcomer Agency, to be held by said Newcomer Agency together with the earnest money until the transaction is completed according to this agreement, and that all further payments are to be made through Newcomer Agency.

.   .   .   .   .   .   .   .   .   .   .   .   .

"That if the first party cannot deliver title as agreed, the earnest money paid by the second party shall be returned to said second party and this contract cancelled."

Heretofore we have indicated that by agreement the cause was submitted to the trial court upon the pleadings and a stipulation of facts. Having summarized the pleadings it now becomes necessary to direct attention to the stipulation. That instrument is lengthy and we hesitate to quote it in toto. However, since, where the facts are agreed upon and in writing, this court is in the same position to weigh them as the court below (See *City of Wichita v. Boles*, 156 Kan. 619, 135 P. 2d 542), we have decided that should be done. It reads:

"In this stipulation whenever the term defendants is used, it applies only to defendants Carl A. Bower, and Anne S. Bower.

"It is hereby stipulated between the parties hereto that defendants acquired title to the real property in controversy from Alonzo Walls and Lucy Walls, his wife, by warranty deed dated August 19, 1946; that said Alonzo Walls took title to said property by Sheriff's Deed, dated October 1, 1942, which deed was issued pursuant to the tax foreclosure laws of Kansas, Chapter 375, 1941 Session Laws, Kansas.

"That the real property in controversy is Lot No. 37 on Berkley Road in Berkley Hills Addition, which lot is 50 feet in width and fronts west on the east side of Berkley Road; that defendants procured a permit from the Fire Chief of the City of Emporia, on August 21, 1946, to move a house which had been built elsewhere on to said lot, and pursuant to said permit, did move the house on said lot during August of 1946; that during said year defendants made improvements on said house, which did not include structural alterations.

"The above mentioned house is a frame house and is located on the lot, 41 feet back from the sidewalk. The south wall of the house is 9 feet from the South line of the lot. The north wall of the house is 18 inches from the north line of the lot. The walls of the house are 10 feet 11 inches in height, from the ground to eaves, and the ridge of the roof is 21 feet, 2 inches, from the

ground. The chimney extends 2 feet and 6 inches above the ridge of the roof. Two dormer windows face the front. The sills of these windows are more than 10 feet 11 inches above the ground. The portion of the house above the first or ground floor is immediately under the roof; is unfinished and the only means of access thereto is through a square hole cut through the ceiling of a storeroom closet off the hallway.

"It is further stipulated that defendants had their abstract of title recertified and delivered to said escrow holder, Ted Newcomer, for delivery to plaintiff, which he did, and the following correspondence ensued.

"Emporia, Kansas
June 13, 1949.

Dr. L. K. Lohmeyer,
Emporia, Kansas.

Dear Dr. Lohmeyer:

You have handed me abstract of title to Lot No. 37, Berkley Hills Addition to the City of Emporia, for examination.

Before examining this abstract I wish to call your attention to one matter. It is my information that the dwelling house located on the above described property extends to within 17 or 18 inches of the North line of the lot. There is nothing in the abstract bearing on this question, and I suggest that before further considering this abstract, you ascertain the location of the dwelling house with reference to the property line, in view of the fact that Section 5-224 of the Ordinances of the City of Emporia, provides as follows:

"In no case shall a frame building be erected within three feet of the side or rear lot line, nor within six feet of another building, unless the space between the studs on such side shall be filled solidly with not less than 2½ inches of brick work or other equivalent incombustible material."

In view of the foregoing Ordinance, you would be subject to having to remove that portion of your building extending beyond the three foot restricted space, in the event the owner of the adjoining property or any subsequent owner, or the City should take exception to the encroachment. The passing of time, commonly referred to as the Statute of Limitations, does not cure such a defect. If your investigation discloses that the building on the above lot complies with the foregoing Ordinance, then I will proceed with the examination of the title.

Very truly yours,
(Signed)    Roscoe W. Graves."

RWG/hs

"Emporia, Kansas
June 16, 1949

Ted Newcomer,
Newcomer Agency,
Emporia State Bank Bldg.,
Emporia, Kansas.

Dear Sir:

A copy of the letter written to me by Roscoe Graves, Lawyer, dated June 13, 1949, and delivered to you the same date is called to your attention.

The opinion drawn by this letter makes the title to the property, Lot number

thirty-seven (37) on Berkley Road, non-merchantable, as per agreement date May 19, 1949.

For this reason I am asking the return of my payments totaling thirty-eight hundred dollars ($3800.00).

Sincerely yours,

(Signed)     K. L. Lohmeyer, M. D."

"No further legal opinion, other than above, nor information with reference to title requirements have been delivered to defendants or their attorneys.

"That plaintiff is now living in said house and has been in possession thereof since June 1, 1949.

"That defendants offered to purchase and convey to plaintiff two feet along the entire north side of the lot in controversy without charge and plaintiff refused such offer.

"It is further stipulated and agreed that the following paragraphs are the portion of the Declaration of Restrictions affecting Berkley Hills Addition to the City of Emporia and that the property in controversy herein is a part of said Addition.

"Declaration of Restrictions Affecting Berkley Hills Addition to Emporia, Kansas .

Calvin H. Lambert and wife to the Public:

Filed July 6, 1926,

Register of Deeds

Lyon County, Kansas.

"Persons Bound By These Restrictions.

"All persons who now own or who shall hereafter acquire any interest in any of the lots in Berkley Hills, shall be taken and held to agree and covenant with the owner of the lots shown on said plat, and with his successors and assigns, to conform to and observe the following covenants, restrictions and stipulations as to the use therof, and the construction of residences and improvements thereon, for a period of 25 years from May 15, 1926, provided however, that each of said restrictions shall be renewable in the manner hereinafter set forth.

"Sec. II Required Cost and Height of Residence.

"Any residence erected wholly or partially on any of the following lots or part or parts therof as indicated in this section shall cost not less than the sum herein below set forth, and shall be of the height designated as follows:     .

"On lots 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 56, 57, 58, 59, 60, 61, 62 and 63, two-story residences, $7000.

"Section 9.  Duration of Restrictions:

"Each of the restrictions above set forth shall be binding upon Calvin H. Lambert and his successors and assigns for a period of 25 years from May 15. 1926, and shall automatically be continued thereafter for successive periods of 25 years each.

"Section 10.  Right to Enforce:

"The restrictions herein set forth shall run with the land and bind the present owner, his successor and assigns and all parties claiming by, through and under him.  The section further provides that the owner or owners of any of the above land shall have the right to sue for and obtain an injunction, prohibitory or

mandatory, to prevent the breach of or enforce the provisions of the restrictions above set forth, in addition to the ordinary legal action for damages, and the failure of Calvin H. Lambert or the owner or owners of any other lot or lots in this addition, to enforce any of the restrictions herein set forth at the time of its violation shall in no event be deemed to be a waiver of the right to do so thereafter.

"TENDER OF POSSESSION.

"The plaintiff does hereby tender the possession of the involved property to the defendants at such time as the payments he has made under the contract of sale have been repaid to him by the escrow party.

"ORDINANCES OF CITY OF EMPORIA.

"Sec. 5-224. Frame Buildings.

"In no case shall a frame building be erected within three feet of the side or rear lot line, nor within six feet of another building, unless the space between the studs on such side be filled solidly with not less than 2½ inches of brickwork or other equivalent incombustable material.

"1946 Revised Ordinances of City of Emporia.

"Article XXVI. Conflicting Ordinances Repealed.

"Sec. 1. Any ordinances or parts of ordinances and particularly any parts of Ordinance 1314 as Amended, in conflict herewith are hereby repealed.

"Revised Zoning Ordinance,
No. 1674, January, 1949.

"Article V. 'A' Single Family District Regulations.

"Sec. 4. (2) a. Except as hereinafter provided in the following paragraph and in Article XVI, there shall be a side yard on each side of a buliding, having a width of not less than five (5) feet.

"b. Whenever a lot of record existing.

"2. Side Yard.

"(a) Except as hereinafter provided in the following paragraph and in Article XVI, there shall be a side yard on each side of a building, having a width of not less than five (5) feet.

"(b) Whenever a lot of record existing at the time of the passage of this ordinance has a width of less than fifty (50) feet, the side yard on each side of a building may be reduced to a width of not less than ten (10) per cent of the width of the lot, but in no instance shall it be less than three (3) feet.

"Revised Zoning Ordinance,
No. 1674, January, 1949."

From what has been heretofore related, since resort to the contract makes it clear appellees agreed to convey the involved property with an abstract of title showing good merchantable title, free and clear of all encumbrances, it becomes apparent the all decisive issue presented by the pleadings and the stipulation is whether such property is subject to encumbrances or other burdens making the title unmerchantable and if so whether they are such as are excepted by the provision of the contract which reads "subject however, to all restrictions and easements of record applying to this property."

Decision of the foregoing issue can be simplified by directing attention early to the appellant's position. Conceding he purchased the property subject to all restrictions of record he makes no complaint of the restrictions contained in the declaration forming a part of the dedication of Berkley Hills Addition nor of the ordinance restricting the building location on the lot but bases his right to rescission of the contract solely upon presently existing violations thereof. This, we may add, limited to restrictions imposed by terms of the ordinance relating to the use of land or the location and character of buildings that may be located thereon, even in the absence of provisions in the contract excepting them, must necessarily be his position for we are convinced, although it must be conceded there are some decisions to the contrary, the rule supported by the better reasoned decisions, indeed if not by the great weight of authority, is that municipal restrictions of such character, existing at the time of the execution of a contract for the sale of real estate, are not such encumbrances or burdens on title as may be availed of by a vendee to avoid his agreement to purchase on the ground they render his title unmerchantable. For authorities upholding this conclusion see *Hall v. Risley & Heikkila*, 188 Or. 69, 213 P. 2d 818; *Miller v. Milwaukee Odd Fellows Temple*, 206 Wis. 547, 240 NW 193; *Wheeler v. Sullivan*, 90 Fla. 711, 106 So. 876; *Lincoln Trust Co. v. Williams Bldg. Corp.*, 229 NY 313, 128 NE 209; Maupin on Marketable Title to Real Estate, (3rd Ed.) 384 § 143; 175 A. L. R. anno. 1056 § 2; 57 A. L. R. anno. 1424 § 11 (c); 55 Am. Jur. 705 § 250; 66 C. J. 860, 911 §§ 531, 591.

On the other hand there can be no question the rule respecting restrictions upon the use of land or the location and type of buildings that may be erected thereon fixed by covenants or other private restrictive agreements, including those contained in the declaration forming a part of the dedication of Berkley Hills Addition, is directly contrary to the one to which we have just referred. Such restrictions, under all the authorities, constitute encumbrances rendering the title to land unmerchantable. See the authorities above cited, also decisions to be found in American Digest System, Vendor and Purchaser, § 134 (4); 66 C. J. 588 § 909; 55 Am. Jur. 702 § 246 and Maupin on Marketable Title to Real Estate (3rd Ed.) 323 § 106; 57 A. L. R. Anno 1414 § 11 (a).

In the instant case assuming the mere existence of the restrictions imposed by the provisions of section 5-224 of the ordinances of the

city of Emporia do not constitute an encumbrance or burden and that the dedication restrictions fall within the exception clause of the contract providing Lot 37 was to be conveyed subject to all restrictions and easements of record applying thereto there still remains the question whether, under the stipulated facts, the restrictions imposed by such ordinance and/or the dedication declaration have been violated and if so whether those violations make the title to such property unmerchantable.

As we turn to the stipulation of facts upon which our decision as to whether the record discloses violations of the dedication declaration or the ordinance must depend we shall first dispose of contentions advanced by appellees regarding the construction to be given that instrument.

The first of these contentions is to the effect the phrase, "any residence erected wholly or partially on any of the following lots . . . ", to be found in section 2 of the declaration is to be construed as limited to residences actually constructed thereon and that hence the moving of the house now located on Lot 37, long after it had been constructed, even though it was not of the height required by its terms did not result in a violation. We do not agree. The word "erected" as used in section of the declaration in question, in our opinion, is so comprehensive that it must be construed as including houses moved upon the restricted area. Next it is argued that even though such house was a one story dwelling the stipulated facts show that between its foundation and the top of the chimney there was sufficient room to make it into a two story dwelling and therefore it did not violate the restrictive covenant of section 2 providing it should be of the height of a two story residence. Here again we believe appellees have placed too narrow a construction upon this section which contemplates that houses constructed within the restricted area must be two story residences. Finally it is urged the dedication restrictions insofar as they apply to Lot 37 have no force and effect because they were extinguished by the tax foreclosure proceeding referred to in the second paragraph of the stipulation. We know of no Kansas decision sustaining appellees' position on this point. It is true, as they suggest, a sheriff's deed to this property was executed in 1942 and that the statute then in force and effect (G. S. 1941 Supp. 79-2803) contained no provision requiring the district court to render judgment subject to valid covenants running with the land and to valid easements of record or in

use. They insist the fact the section just mentioned was amended in 1943 (see L. 1943 Ch. 302 [2]) and still later in 1945 (L. 1945 Ch. 362[3]) so that it now contains an express provision that tax foreclosure judgments are to be rendered subject to such covenants and easements indicates that legislative intent under the 1941 statute was to extinguish all such covenants and easements by judgment. Our view is the subsequent amendments are indicative of an intention directly to the contrary. However, we need not pass upon that question. The right to enforce the dedication restrictions, which are conceded to have been of record, was vested in all persons owning property in the area covered by the declaration and the common grantor. Before we could say their rights to enforce such restrictions were extinguished by the judgment affecting Lot 37 it must be established they were parties defendant to the action in which such judgment was rendered. That does not appear from the stipulation of facts, indeed no one contends they were.

Other contentions advanced by appellees relate to the force and effect to be given portions of the stipulation relative to violation of section 5-224 of the ordinance. They first insist the word "erected", as used in such section, does not include the building moved upon the lot in question. Heretofore we have indicated the same word as used in the dedication declaration includes buildings moved upon such lots. We believe it is entitled to the same construction in the ordinance. Next it is claimed section 5-224 is of no force and effect because it had been repealed by other ordinances of the city of Emporia. If so we fail to find anything in the stipulation warranting that conclusion. Lastly it is argued that because the stipulation discloses appellees procured a permit from the Fire Chief of the city of Emporia to move the involved house on Lot 37 the provisions of such ordinance had no application and hence were not violated. We find nothing in the stipulation to indicate, let alone warrant a conclusion, that this permit authorized the appellees to move the house within 18 inches of the rear lot line in violation of the terms of such ordinance. Moreover, it should perhaps be added, that even if it had, in the absence of anything in the stipulation to show its existence, we would not be justified in concluding the Fire Chief or any other official of the city had authority to take action resulting in the nullification of its express terms.

With contentions advanced by appellees with respect to the force and effect to be given certain portions of the stipulation disposed of

it can now be stated we are convinced a fair construction of its terms compels the conclusion that on the date of the execution of the contract the house on the real estate in controversy was a one story frame dwelling which had been moved there in violation of section 2 of the dedication restrictions providing that any residence erected on Lot 37 should be of the height of a two story residence and that it had been placed within 18 inches of the side or rear lot line of such lot in violation of section 5-224, *supra,* prohibiting the erection of such building within three feet of such line.

There can be no doubt regarding what constitutes a marketable or merchantable title in this jurisdiction. This court has been called on to pass upon that question on numerous occasions. See our recent decision in *Peatling v. Baird,* 168 Kan. 528, 213 P. 2d 1015, and cases there cited, wherein we held:

"A marketable title to real estate is one which is free from reasonable doubt, and a title is doubtful and unmarketable if it exposes the party holding it to the hazard of litigation.

"To render the title to real estate unmarketable, the defect of which the purchaser complains must be of a substantial character and one from which he may suffer injury. Mere immaterial defects which do not diminish in quantity, quality or value the property contracted for, constitute no ground upon which the purchaser may reject the title. Facts must be known at the time which fairly raise a reasonable doubt as to the title; a mere possibility or conjecture that such a state of facts may be developed at some future time is not sufficient." (Syl. ¶¶ 1, 2)

Under the rule just stated, and in the face of facts such as are here involved, we have little difficulty in concluding that the violation of section 5-224 of the ordinances of the city of Emporia as well as the violation of the restrictions imposed by the dedication declaration so encumber the title to Lot 37 as to expose the party holding it to the hazard of litigation and make such title doubtful and unmarketable. It follows, since, as we have indicated, the appellees had contracted to convey such real estate to appellant by warranty deed with an abstract of title showing good merchantable title, free and clear of all encumbrances, that they cannot convey the title contracted for and that the trial court should have rendered judgment rescinding the contract. This, we may add is so, notwithstanding the contract provides the conveyance was to be made subject to all restrictions and easements of record for, as we have seen, it is the violation of the restrictions imposed by both the ordinance and the dedication declaration, not the existence of those restrictions, that renders the title unmarketable. The decision just an-

nounced is not without precedent or unsupported by sound authority.

In *Moyer v. DeVincentis Con. Co.*, 107 Pa. Super. 588, 164 A. 111, involving facts, circumstances, and issues almost identical to those here involved, so far as violation of the ordinance is concerned, the plaintiff (vendee) sued to recover money advanced on the purchase price pursuant to the agreement on the ground that violation of a zoning ordinance had made title to the property involved under its terms unmarketable. The court upheld the plaintiff's position and in the opinion said:

"We are of the opinion that a proper construction of the agreement of sale supports the position of appellant, the vendee in the agreement. The vendor agreed to furnish a good and marketable title free from liens and incumbrances, excepting existing restrictions and easements, if any. As applied to the facts of the case in hand, vendee agreed to purchase the premises subject to the zoning ordinance, but not to purchase the premises, when the house was built in violation of the terms of that ordinance.

"The facts lend weight to the force of this construction. It appears from the pleadings that the premises to be conveyed embraced not only the bare land, but an entire parcel of real estate which included a semidetached dwelling. The description is not by metes and bounds but by house number. The vendee could not take possession without immediately becoming a violator of the law and subject to suit, with a penalty of $25 for every day the building remained in position overlapping the protected area.

"The title was not marketable, not because of an existing zoning ordinance, but because a building had been constructed upon the lot in violation of that ordinance . . ." (p. 592).

To the same effect is 66 C. J. 912 § 592, where the following statement appears:

"Existing violations of building restrictions imposed by law warrant rejection of title by a purchaser contracting for a conveyance free of encumbrances. The fact that the premises to be conveyed violate tenement house regulations is ground for rejection of title where the contract of sale expressly provided against the existence of such violations, . . ."

See, also *Moran v. Borrello*, 4 N. J. Misc., 344, 132 A. 510.

With respect to covenants and restrictions similar to those involved in the dedication declaration, notwithstanding the agreement —as here—excepted restrictions of record, see *Chesebro v. Moers*, 233 N. Y. 75, 134 N. E. 842, 21 A. L. R. 1270, holding that the violation by a property owner of covenants restricting the distance from front and rear lines within which buildings may be placed renders the title to such property unmarketable.

See, also, *Hebb v. Severson,* 32 Wash. (2) 159, 201 P. 2d 156, which holds, that where a contract provided that building and use restrictions general to the district should not be deemed restrictions, the purchaser's knowledge of such restriction did not estop him from rescinding the contract of purchase on subsequent discovery that the position of the house on the lot involved violated such restrictions. At page 172 of the opinion in that case it is said:

"Finally, the fact that the contract contains a provision that protective restrictions shall not be deemed encumbrances cannot aid the respondents. It is not the existence of protective restrictions, as shown by the record, that constitutes the encumbrances alleged by the appellants; but, rather, it is the presently existing violation of one of these restrictions that constitutes such encumbrances, in and of itself. The authorities so hold, on the rationale, to which we subscribe, that to force a vendee to accept property which in its present state violates a building restriction without a showing that the restriction is unenforcible, would in effect compel the vendee to buy a lawsuit. 66 C. J. 911, Vendor and Purchaser, § 590; *Dichter v. Isaacson,* 132 A. 481, 138 A. 920, 4. N. J. Misc., 297; *Chesebro v. Moers,* 233 N. Y. 75, 134 N. E. 842, 21 A. L. R. 1270." (p. 172.)

Finally appellees point to the contract which, it must be conceded, provides they shall have time to correct imperfections in the title and contend that even if it be held the restrictions and the ordinance have been violated they are entitled to time in which to correct those imperfections. Assuming, without deciding, they might remedy the violation of the ordinance by buying additional ground the short and simple answer to their contention with respect to the violation of the restrictions imposed by the dedication declaration is that any changes in the house would compel the purchaser to take something that he did not contract to buy.

Conclusions heretofore announced require reversal of the judgment with directions to the trial court to cancel and set aside the contract and render such judgment as may be equitable and proper under the issues raised by the pleadings.

It is so ordered.